593 So.2d 802 (1992)
STATE of Louisiana
v.
Jette JONES, a/k/a Peaches.
No. 90-KA-1827.
Court of Appeal of Louisiana, Fourth Circuit.
January 16, 1992.
Harry F. Connick, Dist. Atty., Martin Melton, Asst. Dist. Atty., New Orleans, for plaintiff/appellee.
Sherry Watters, Orleans Indigent Defender Program, New Orleans, for defendant/appellant.
Before LOBRANO and PLOTKIN, JJ., and BRYAN, J. Pro Tem.
TREVOR G. BRYAN, Judge Pro Tempore.
On April 26, 1990 the State charged Jette Jones a/k/a Peaches, by bill of information with one count of aggravated battery, a violation of La.R.S. 14:34. Jones pled not guilty. On July 26, 1990, a jury found her guilty as charged, and the trial judge sentenced her as a multiple offender to four years imprisonment.
On the evening of November 4, 1987, Johnnie Johnson, seventy-two years old, was watching a movie on the television in his bedroom when Jones, twenty-six years old, came to his house, inquiring about his health. He had gone to the doctor that day about his heart. Johnson knew Jones from the neighborhood, and he baby-sat for her children a few times at his house.
Under the guise of watching the movie with Johnson and dusting his belongings, Jones picked up a heavy wooden figurine and struck Johnson several times in the head. As he was losing consciousness, she removed his pants and took his wallet and other items from his pockets. She then fled, carrying the figurine with her.
*803 Johnson crawled to his living room and passed out. His son called, and Johnson picked up the phone but then dropped it. His son rushed to Johnson's house, finding Johnson hurt and seeing a trail of blood leading from the bedroom. When he regained consciousness, Johnson named Jones as his attacker and listed the missing items. He spent twelve days in the hospital. A warrant was issued for Jones's arrest; she was arrested two and one half years later.
A review of the record for errors patent reveals none.
In her sole assignment of error, Jones argues that the trial judge improperly commented on the facts of the case and restricted cross-examination of a witness by the defense, denying her a fair trial.
La.C.Cr.P. art. 772 provides:
The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted.
The comment Jones complains of is found in the following exchange during the defense counsel's cross-examination of the victim's son:
Q. Now, let me ask you this. In dealing with this individual, as you say "Peaches", had you seen her in person prior to that day at any time at your father's house?
A. Yes, sir.
Q. Was she living at your father's house?
A. No, sir.
Q. Now, let me ask you this. Did she and he ever come to your house?
A. Yes, sir.
Q. How many occasions prior to this incident?
A. One time that I remember for sure, possibly more.
Q. And they came as boyfriend, girlfriend?
A. No, sir.
THE COURT: No, no. Wait. Come on, Mr. Dolan. You're out of line.
DEFENSE COUNSEL:
Q. Do you know, from your own knowledge, whether this individual, Jette, as you call Peaches, lived in the neighborhood near your father?
A. Okay. By my own knowledge, no, I don't know. I didn't know where she lived.
Jones claims that by his one brief comment, the trial judge improperly commented on the evidence; specifically, that he believed the suggestion of a boyfriend-girlfriend relationship between her and the victim was absurd. Such a relationship, Jones argues, was the essence of the defense's theory.
Jones testified that she had a romantic relationship with the victim and had lived with him for three months. She said that they had a friendly breakup, but that she left him because he was possessive and jealous. On the evening of November 4, 1987, she testified, the victim demanded that she spend the night with him, and refused to unlock an iron gate preventing her from leaving. She claims to have defended herself against Johnson, striking him as he reached for a gun he kept under his mattress.
One element of a fair trial is the requirement of complete neutrality on the part of the judge. State v. Hickman, 539 So.2d 108 (La.App. 4th Cir.1989), writ denied 548 So.2d 1243 (La.1989). Disparaging remarks or intemperate criticism of defense counsel by the trial judge may constitute reversible error when such remarks adversely influence and prejudice a jury against the defendant. State v. Gilmore, 529 So.2d 859 (La.App. 4th Cir.1988), writ denied 533 So.2d 373 (La.1988). So, to constitute reversible error the effect of the improper comments must have influenced the jury and contributed to the verdict. State v. Johnson, 438 So.2d 1091 (La.1983).
The judge's remark, while perhaps not appropriate, nevertheless was not actually a comment on the evidence nor was it an opinion as to this defendant's guilt or innocence. To the extent that the comment *804 could have been directed at a defense theorythat Jones and the victim had a romantic relationshipthis theory is not essential to Jones's claim that she acted in self-defense. Indeed, whether the victim had made advances to Jones that evening causing her to strike him is not dependent on whether the two had a relationship. Actually, the judge's comment was directed at defense counsel, perhaps at the manner he asked the question, the form of the question, or, most importantly, the witness to which he asked the question. A trial judge has the responsibility to exercise control over the nature of the questions posed by counsel to ensure fairness and judicial economy. An unavoidable risk of this duty is that in the heat of a trial, adverse rulings may incorrectly appear to reflect the judge's opinion of a party, witness or theory of the case. Experienced trial lawyers aware of this risk weigh seriously these concerns in phrasing questions to a witness. Thus, the risk exerts a moderating influence on the excesses of advocacy. The risk can be ameliorated by proper jury instructions, which were given in this case.
The challenged remark of the trial judge, whether inappropriate or not, does not rise to the level of a prejudicial error which requires reversal. Standing alone, the remark does not evidence the judge's abandonment of neutrality which is required to constitute prejudicial error.
In State v. Jamison, 565 So.2d 1080 (La. App. 4th Cir.1990), this Court found that when the trial judge remarked that defense counsel would be wasting his time by showing the jury half of a set of photographs before cross-examination of the rest of the set, the judge was not commenting on the value of the evidence, but was attempting to regulate the orderly presentation of the evidence to the jury. Furthermore, with no indication that the comment either influenced the jury or contributed to the verdict, the trial judge's comment was not reversible error. 565 So.2d at 1083.
In State v. Joseph, 437 So.2d 280 (La. 1983), the court noted that while it was questionable whether the trial judge's description of an item of evidence for the record of what was apparent to the jury was a comment on the facts of the case or a recapitulation of the evidence, since the remark did not imply an opinion as to defendant's guilt or innocence, any error was harmless. 437 So.2d at 282.
Also contrary to Jones's claim, the trial judge's one comment did not restrict cross-examination in any way. First, the witness had fully answered defense counsel's question before the trial judge made the remark to counsel. Second, counsel had already asked if the witness had seen Jones at his father's house, if she lived at his father's house, and if she and his father had ever come to his house together. After the judge's comment, counsel proceeded to ask another question about the witness's familiarity with Jones.
Moreover, the victim had already testified, in cross-examination, that Jones never lived with him, that they did not have an argument that evening, and that he had not made sexual advances to her. In rebuttal testimony, the victim reiterated that he had not made advances toward her and that they had not been lovers.
Hence, the trial judge allowed Jones to fully explore issues of whether her actions were justified and whether she and the victim had a relationship. Jones has shown no prejudice to her by the remark she complains of, so that there is no indication that the comment influenced the jury or contributed to the verdict.
This is not a situation like in State v. Duplessis, 457 So.2d 604, 606-610 (La. 1984), where the court reversed a conviction, finding that the tenor of many exchanges between defense counsel and the trial judge throughout voir dire and closing arguments colored the entire proceeding and undermined the judicial atmosphere necessary to insure the proper conduct of the trial, such that the effect on the jury's evaluation of evidence caused by these errors was not harmless.
In this case, any error by the judge attributable to the one comment is harmless in light of the overwhelming evidence of Jones's guilt, and her unhampered ability to explore any theory she chose.
*805 Additionally, defense counsel's failure to object to the judge's remark at trial waives the argument on appeal. La.C.C.P. art. 841. State v. Ellwest Stereo Theaters, Inc., 412 So.2d 594 (La.1982); State v. Gultry, 471 So.2d 804 (La.App. 5th Cir.1985).
Accordingly, because Jones's sole assignment of error has no merit, her conviction and sentence are affirmed.
AFFIRMED.