ROSEMARY LEDET, Judge.
Lin this criminal appeal, the defendant, Kawana Jasper, seeks review of her conviction and sentence for two counts of aggravated battery, in violation of La. R.S. 14:34. For the reasons that follow, we affirm.

STATEMENT OF THE CASE

On May 3, 2012, Ms. Jasper was charged by bill of information with two counts of aggravated battery. On May 21, 2012, she was arraigned and pled not guilty to both counts. On January 17, 2013, the district court held a preliminary hearing and found probable cause. In April 2013, a two-day jury trial was held. The jury found Ms. Jasper guilty as charged on both counts. On May 22, 2013, the district court denied Ms. Jasper’s motions for post-verdict judgment of acquittal and new trial. On the same date, the district court sentenced Ms. Jasper to serve four years at hard labor on each count, with credit for time served. The sentences were to be served concurrently to each other and without benefit of probation or suspension of sentence.[1] On June 19, 2013, Ms. Jasper filed a motion to reconsider ^sentence. On July 9, 2013, the district court denied the motion to reconsider. This appeal followed.

STATEMENT OF THE FACTS

On the evening of October 29, 2011, a “Sweet Sixteen” birthday party for Tashea Hankton was held on the second floor of Hoshun Restaurant (the “Restaurant”), which is located on St. Charles Avenue in New Orleans, Louisiana. On the night of the party, two fights occurred. The first fight occurred during the party on the upstairs balcony. The second fight occurred after the party in the downstairs lobby of the Restaurant. The two counts of aggravated battery for which Ms. Jasper was charged arose out of the second fight.
Although only thirty guests were scheduled to attend the party, between eighty to one hundred people showed up to the party. Among the attendees were a trio of “cousins” — Corianna Jasper a/k/a “Pinky” (Ms. Jasper’s daughter), Sha’Ron Sears a/k/a “Bubbles” (Ms. Jasper’s niece), and LaSheba Jaurnee (Corianna and Sha’Ron’s friend)[2] (collectively the “Trio”). The Trio attended the party together. After the first fight, the Trio, as well as most of the other attendees, left the party. The Trio went downstairs to call and wait for their parents. Corianna had a busted lip as a result of the first fight and could not speak, so her cousin called her mother for her.
Meanwhile, the only people left upstairs at the party were the hosts and a handful of people assisting with the party. Among the people remaining upstairs were two of Tashea Hankton’s cousins, two sisters Paris and D’Miria Livas.[3] |,sAccording to Paris and D’Miria, when they realized that Tashea was not upstairs, they — aceompa- *1243 nied by their brother and a cousin — went downstairs to look for her. They took the elevator to the first floor. As they exited the elevator, Paris came out first, followed by her brother, sister, and cousin. When they could not find Tashea on the first floor, they believed she might be outside. Paris opened the front door of the Restaurant to go outside. When she did so, she heard Ms. Jasper say, “which one did you get in an altercation with?” Ms. Jasper then threw bleach at Paris and D’Miria from a white styrofoam cup. The bleach got on Paris’ face, jacket, and shirt. The bleach also got in D’Miria’s eyes and on her dress. Their eyes started to burn, and they turned away from Ms. Jasper. Because they could not see, Paris and D’Mi-ria went back upstairs. After unsuccessfully attempting to wash the bleach out of their eyes, the victims’ mother took them to the emergency room at Children’s Hospital.
Jennifer Schwehm, a registered nurse, was working at Children’s Hospital on the evening of the incident. Ms. Schwehm took a report from the victims, who stated that bleach was thrown in their eyes. Ms. Schwehm called 911 and reported that two young females were in the emergency room, that bleach was thrown into their eyes, and that they had scratches on then-bodies.
New Orleans Police Department (“NOPD”) Officer John Walker responded to the disturbance call at the Restaurant that night. When he arrived at the Restaurant, he was informed that some type of liquid was thrown in the victims’ faces. He was unable to locate the victims at the Restaurant. A few minutes later, he received another dispatch call indicating that Children’s Hospital had two females in the emergency room who stated that some type of liquid substance, possibly a chemical, was thrown in their faces. Officer Walker relocated to | ¿Children's Hospital and spoke with the two victims and then-mother. The victims were upset, in discomfort, and their eyes were red and bloodshot. The victims could not open their eyes while they were speaking with the officer.
Officer Walker also spoke with the doctor who treated the victims that night, Dr. John Bardigan. Dr. Bardigan diagnosed the victims with chemical conjunctivitis of the eye — an irritation of the eye tissue due to a chemical. He stated that the victims’ eyes were red and watery and that they had painful tearing. He prescribed an ointment for their eyes and recommended that they see an ophthalmologist for a follow-up. The victims were discharged that evening.
Paris testified that about a week after the incident, she went to see an eye doctor and that her vision is now permanently impaired in both eyes. She has to wear either contact lenses or glasses at all times. D’Miria testified that before the incident she only wore glasses for reading. Since the incident, she has to wear glasses all the time. She cannot see in the distance, and her vision is blurry.[4]
Before the incident at the Restaurant, neither victim had met Ms. Jasper. Both victims identified Ms. Jasper in a photographic lineup, as the person who threw bleach in their eyes. Both victims also identified Ms. Jasper in court as the person who threw bleach at them.
In her defense, Ms. Jasper testified that, at about 9:30 p.m. that night, she received a telephone call from her nephew Shaq- *1244 uille. As a result of that call, she went to pick up her daughter from the party. When she arrived, her daughter and a few other teenagers were standing outside the Restaurant, but no adults were 1 ¿outside. She went into the Restaurant and spoke with the Restaurant’s manager, Mick Tran, about the incident. She asked Mr. Tran to call the police, and then went outside to wait for the police to arrive.
Ms. Jasper testified that when the police did not come, she went back inside the Restaurant to speak with Mr. Tran, but she denied yelling at him.[5] She testified that as she was walking back outside, she heard someone say, “there they go.” She turned around, and a guy hit her. Ms. Jasper testified that someone threw a bus pan full of silverware into the crowd and hit her daughter, Corianna.[6] Ms. Jasper also testified that Paris took bleach from a cart of cleaning supplies near the elevator[7] and threw it at the group.[8] Ms. Jasper denied throwing bleach at anyone, and she denied bringing bleach with her.
The Trio testified for the defense. Sha’Ron and Corianna testified that a boy came up and hit Ms. Jasper. At that point, a fight erupted. The Trio testified that Paris then took bleach from a cleaning cart and threw it at the group. The Trio also corroborated Ms. Jasper’s testimony that she did not throw bleach at anyone. The Trio further testified that another girl also named “Pinky,” a/k/a Jar-ameshia, then threw bleach back into the crowd. The Trio’s testimony, however, varies as to what | (¡type of container Pinky threw the bleach out of — a white styro-foam cup, as Sha’Ron testified; a little black bottle, as Corianna testified; or a mace type tube, as LaSheba testified. Co-rianna and LaSheba testified that they got bleach on them during the fight. After the fight was over, Ms. Jasper grabbed the Trio and they left the Restaurant. She did not speak with the police.
Detective Wayne DeLarge was assigned to handle the follow-up investigation of the aggravated batteries. He read Officer Walker’s initial report and reviewed the crime lab’s photographs. Detective De-Large also spoke with the victims (Paris and D’Miria); the Restaurant’s manager, Mr. Tran; the woman who arranged the party; and several individuals at the high school that Corianna attended.[9] On cross-examination, Detective DeLarge testified that the only individuals he spoke to during his investigation that actually were at *1245 the Restaurant on the night of the party were the victims and the Restaurant’s manager. Detective DeLarge presented the victims with photographic lineups. As noted, both victims identified Ms. Jasper as the person who threw the bleach in their faces. He also presented Mr. Tran with a single photograph of Ms. Jasper. He identified Ms. Jasper as the parent who complained about her daughter being injured in a fight. After developing Ms. Jasper as a suspect through his investigation of the incident, Detective DeLarge obtained an arrest warrant for Ms. Jasper.

ERRORS PATENT

A review of the record for patent errors reveals one. The error occurred when the district court imposed Ms. Jasper’s sentence immediately after it denied 17her motion for new trial. La.C.Cr.P. art. 873 provides that “[i]f a motion for new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled.”
A review of the transcript from the sentencing hearing reveals that defense counsel did not expressly waive Ms. Jasper’s right to this delay. Nevertheless, we find that the district court’s failure to observe the twenty-four-hour delay was harmless error. This court has held that failure to observe the twenty-four hour delay provided under La.C.Cr.P. art. 873 is considered harmless error when the following three circumstances are present: (i) there is a sufficient delay between the conviction and the sentencing; (ii) there is no indication that the sentence was hurriedly imposed; and (iii) there is neither an argument nor a showing of actual prejudice by the failure to observe the twenty-four-hour delay. State v. Stovall, 07-0343, p. 15 (La.App. 4 Cir. 2/6/08), 977 So.2d 1074, 1084 (citing State v. Foster, 02-0910, pp. 3-4 (La.App. 4 Cir. 12/11/02), 834 So.2d 1188, 1192) (finding failure to observe twenty-four-hour delay was harmless error when almost two months elapsed between the defendant’s conviction and sentencing and the defendant did not show prejudice); see State v. Jefferson, 97-2949, pp. 5-6 (La.App. 4 Cir. 4/21/99), 735 So.2d 769, 772-73 (finding failure to observe twenty-four-hour delay was harmless error when three months elapsed between the defendant’s conviction and sentencing and the defendant did not show any prejudice).
We find all three circumstances are present in this case. First, seven weeks elapsed between Ms. Jasper’s conviction and sentencing — Ms. Jasper was convicted on April 4, 2013 and sentenced on May 22, 2013. Second, there is no indication that Ms. Jasper’s sentence was hurriedly imposed. Finally, Ms. Jasper |shas not shown actual prejudice by the district court’s failure to observe the twenty-four-hour delay. We thus find that the district court’s failure to observe the twenty-four-hour delay was harmless error.
DISCUSSION

Assignment of Error Number 1

In her first assignment of error, Ms. Jasper contends that the district court erred when it denied her motion for new trial. She argues that the district court should have granted her motion for new trial because the jury’s verdict is not supported by the law and the evidence. This argument has two prongs: (i) that the evidence did not support the finding that she was the person who threw the bleach, and (ii) that the evidence presented did not support a finding that bleach was a dangerous object.
The jurisprudence has recognized that the denial of a motion for new trial based on the contention that the verdict is contrary to the law and the evidence is not *1246 subject to review on appeal. See State v. Guillory, 10-1281, p. 3 (La.10/8/10), 45 So.3d 612, 614-15; State v. Frith, 11-0187, p. 5 (La.App. 4 Cir. 8/10/11), 102 So.3d 65, 69; State v. Sparkman, 08-0472, p. 5 (La.App. 4 Cir. 1/28/09), 5 So.3d 891, 894. Nonetheless, a review of the contentions in Ms. Jasper’s appellant brief reveals that her intent was to assign as error the district court’s denial of her motion for post-verdict judgment of acquittal, which she asserts was premised on “the fact the State failed to prove an essential element of the crime and prove that bleach was a dangerous weapon.” A review of that motion reveals it was premised on the State’s alleged failure to prove that bleach was a dangerous weapon. In contrast, Ms. Jasper’s motion for new trial was based entirely on alleged sequestration errors. Thus, we find Ms. Jasper’s reference in her first assignment of error to the | fldenial of the motion for new trial was an apparent misstatement; her intent was to seek review of the denial of her motion for post-verdict judgment of acquittal, based on the insufficiency of the evidence. Indeed, we note the relief she seeks on appeal is not a new trial, but the granting of a judgment of acquittal. Given these circumstances, we find it appropriate to treat this assignment of error as properly raising a sufficiency of the evidence claim on appeal. See State v. Sterling, 13-287, p. 4 (La.App. 5 Cir. 12/12/13), 131 So.3d 295, 299.
This court summarized the standard for evaluating a sufficiency of the evidence claim in State v. Brown, 12-0626, pp. 6-8 (La.App. 4 Cir. 4/10/13), 115 So.3d 564, 570-71, as follows:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4th Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Id. at 1310. “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319, 1324 (La.1992).
When circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from the Jackson reasonable doubt standard; rather, it is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a 1 mdefendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
*1247 In the instant case, Ms. Jasper was charged with two counts of aggravated battery. Aggravated battery is defined as “battery committed with a dangerous weapon.” La. R.S. 14:34. “Battery” includes “the intentional use of force or violence upon the person of another; or the intentional administration of a poison or other noxious liquid or substance to another.” See La. R.S. 14:33. A “dangerous weapon” is defined as including “any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm.” La. R.S. 14:2(A)(3).
As noted at the outset, Ms. Jasper’s sufficiency of the evidence claim has two parts: (i) the State failed to establish that she was the person who threw the cup of bleach at the victims — misidentification; and (ii) the cup of bleach, in the manner in which it was used, was a dangerous weapon — dangerous weapon. We separately address each of these issues.

(i) Misidentification

Ms. Jasper contends that the jury could not have found beyond a reasonable doubt that she was the person who threw the bleach at the victims and caused their injuries. In support, she contends that the victims’ trial testimony, on which the State’s case was based, was contradictory. She notes that, on direct examination, Paris testified that Ms. Jasper, who she neither knew nor could identify by name, threw bleach at her and her sister. However, Ms. Jasper contends that, on cross-examination, Paris testified that it was Ms. Jasper’s daughter, Corianna, who threw the bleach.
| nThe colloquy on which Ms. Jasper relies, which was between defense counsel and Paris, was as follows:
Q: All of a sudden you decide to go outside, correct?
A: Correct.
Q: And someone just pick[s] you out and throw[s] bleach on you, correct?
A: Someone?
Q: Right.
A: Specifically her daughter. Specifically who threw bleach on me,, her, yes.
Paris’s testimony, as the State contends, was not that Corianna threw the bleach. Rather, it was that Corianna identified Paris to her mother and then Ms. Jasper threw the bleach.
Ms. Jasper further points out that the State disclosed in its pretrial notice of disclosure of exculpatory evidence that one of the victims had identified Jarameshia— the other girl nicknamed “Pinky” — as the one who threw the bleach. However, a review of the State’s pretrial notice of disclosure reveals that neither victim identified Jarameshia as the person who threw the bleach. Rather, one of the victims identified “Jermisha” a/k/a “Pinkey” as the defendant’s accomplice. The victim further stated that she did not know someone named Corianna Jasper. The State explained that the defendant’s accomplice aided the defendant in targeting the victims, but did not throw bleach on anyone.
Ms. Jasper still further points out that when defense counsel asked Paris during cross-examination whether she had picked up a bottle of bleach sitting on a cart with cleaning supplies located by the elevator, she replied: “No. But if that was the case, do they have evidence that bleach was thrown at them?” Ms. Jasper |12also points out that both Paris and D’Miria were involved in the fighting that occurred on the night of the party; they both had scratches and scrapes as a result of such fighting. Given that multiple people were involved in the fights that occurred that night coupled with the victims’'’ own involvement in those fights, Ms. Jasper con *1248 tends that the jury could not have ruled out the reasonable likelihood that it was not her but someone else who threw the bleach at the victims. The State counters that the victims’ testimony was consistent and is corroborated by their identification of Ms. Jasper in separate photographic line-ups.
“The testimony of a single witness, if believed by the trier of fact, is sufficient to support a conviction.” State v. Nellum, 13-0360, pp. 8-9 (La.App. 4 Cir. 2/12/14), 136 So.3d 120, 126 (citing State v. Wells, 10-1338, p. 5 (La.App. 4 Cir. 3/30/11), 64 So.3d 303, 306). This court still further noted in Nellum that “[a] fact finder’s decision concerning the credibility of a witness will not be disturbed unless it is clearly contrary to the evidence.” Nellum, 13-0360 at p. 9, 136 So.3d at 126 (citing State v. James, 09-1188, p. 4 (La.App. 4 Cir. 2/24/10), 32 So.3d 993, 996). In this case, Paris and D’Miria’s testimony was sufficient to establish Ms. Jasper’s identification as the person who threw the bleach at them.

(ii) Dangerous weapon

The second part of Ms. Jasper’s sufficiency of the evidence argument is her contention that the State failed to establish that the cup of bleach that she allegedly threw at the victims was a dangerous weapon pursuant to La. R.S. 14:34. In response, the State contends that the bleach, in the manner used, should be considered a dangerous weapon.
The jurisprudence has recognized that “virtually any item, no matter how innocuous, can be considered a dangerous weapon provided the manner in which it |13is used is likely to produce death or great bodily harm.” State v. Black, 09-1664, p. 16 (La.App. 4 Cir. 6/17/10), 41 So.3d 1243, 1252 (citing State v. Bonier, 367 So.2d 824 (La.1979)). Although no published Louisiana decision has addressed the issue, a Florida court in Smith v. State, 969 So.2d 452, 455 (Fla.App. 1 Dist.2007), found that bleach, in the manner used in that case, constituted a dangerous weapon. In so finding, the Florida court reasoned:
[Ejvidence that the bleach was used in a manner likely to cause great bodily harm existed in the form of the victim’s testimony that the bleach was ‘sloshed’ into her face three or four times and that it got into her eyes, mouth, and throat, making her unable to open her eyes and constricting her throat, making breathing difficult. Additionally, she testified that she later had to go to the emergency room. The testimony required for the jury to make a determination is testimony that bleach was used, not the effect of its use. The jury, as fact finder, could then determine whether such use was likely to cause great bodily harm.
Smith, 969 So.2d at 455.
By analogy, the record in this case supports a finding that the manner in which Ms. Jasper used the cup of bleach was likely to produce great bodily harm. Both Paris and D’Miria testified that Ms. Jasper threw bleach out of a styrofoam cup directly into their eyes. As the State points out, two experts — Dr. Bardigan, the pediatrician who treated the victims at Children’s Hospital; and Seth Stanton, an expert in optometry — testified at trial regarding the effect of bleach on the eye. Dr. Bardigan testified that bleach can cause liquefactive necrosis and that it will burn and dissolve the tissue. Mr. Stanton testified that bleach can cause significant tissue damage as well as blindness. Thus, Ms. Jasper’s act of throwing bleach into a crowd and at the victims’ eyes is a use that will likely cause great bodily harm.
*1249 Insofar as Ms. Jasper’s suggestion that the State failed to provide a rational basis for concluding the chemical she allegédly threw in the victims’ eyes was |14bleach, several witnesses testified that the chemical was bleach. Dr. Bardigan testified that in his opinion both victims had bleach in their eyes when he treated them. Ms. Schwehm testified that the victims’ appearance was consistent with their report that they had bleach in their eyes. Further, crime lab technicians took photographs of the victims and their clothing at Children’s Hospital demonstrating that the clothing was turning to a color that suggested it had been exposed to bleach. We thus find that the State met its burden of establishing that bleach, in the manner in which it was used, constituted a dangerous weapon.

Assignment of Error Number 2

In this assignment of error, Ms. Jasper contends that the district court erred when it allowed Detective DeLarge to remain in the court during the testimony of the five witnesses who testified before him. Ms. Jasper contends that Detective DeLarge should have been sequestered along with the other witnesses. A review of the trial transcript reveals that defense counsel did not initially object to the district court’s exempting Detective DeLarge from the order of sequestration. Rather, defense counsel’s initial objection was only to the district court’s decision exempting the victims from the order of sequestration. The district court overruled that objection, and Ms. Jasper requested that the district court note her objection. Ms. Jasper raised her objection to Detective De-Large’s exemption after the first day of trial and after several witnesses had testified. The district court overruled Ms. Jasper’s objection, noting that the State had announced at the beginning of trial that Detective DeLarge would be the State’s representative.
La. C.E. art. 615 provides:
A. As a matter of right. On its own motion the court may, and on request of a party the court shall, order that the witnesses be excluded from the courtroom or from a place where they can see or hear the proceedings, |ifiand refrain from discussing the facts of the case with anyone other than counsel in the case. In the interests of justice, the court may exempt any witness from its order of exclusion.
B. Exceptions. This Article does not authorize exclusion of any of the following:
[[Image here]]
' (2) A single officer or single employee of a party which is not a natural person designated as its representative or case agent by its attorney.
Comment (d) to La. C.E. art. 615 provides, in pertinent part, as follows:
On the other hand, the exemption of representatives may, if mechanically applied, result in manifest unfairness such as by undermining the right to meaningful cross-examination. Nothing in this Article is intended to deprive the trial court of the power to sequester witnesses in such cases in the interests of justice. See C.Cr.P. Art. 17. Such a potentially prejudicial situation is presented, of course, in criminal cases when a law enforcement officer who is designated as the state’s representative is expected also to testify as a fact witness. In such a situation the court should take appropriate measures to minimize the possibility of prejudice, such as permitting the case agent to be designated as the state’s representative only if he testifies prior to all other fact witnesses.
*1250 “The purpose of the sequestration article is to prevent witnesses from being influenced by the testimony of earlier witnesses, and to strengthen the role of cross-examination in developing the facts.” State v. Doleman, 02-0957, p. 11 (La.App. 4 Cir. 12/4/02), 835 So.2d 850, 858 (citing State v. Castleberry 98-1388, p. 28 (La.4/13/99), 758 So.2d 749, 772; State v. Chester, 97-2790, p. 8 (La.12/1/98), 724 So.2d 1276, 1282); see also State v. Coleman, 02-1000, p. 16 (La.App. 4 Cir. 9/25/02), 828 So.2d 1130, 1140; State v. Breaux, 12-0555, p. 3 (La.App. 4 Cir. 2/27/13), 110 So.3d 281, 284. This court has recognized that “[r]esolution of sequestration problems is within the sound discretion of the district court” and that such determinations will not be disturbed on appeal absent an abuse of that discretion. Rhone v. Boh Bros., 01-0270, p. 3 (La.App. 4 Cir. 12/12/01), 16804 So.2d 764, 766-67; see also Coleman, 02-1000 at p. 16, 828 So.2d at 1140; State v. Bream, 12-0555 at p. 4,110 So.3d at 284.
In State v. Ondek, 584 So.2d 282, 298-99 (La.App. 1st Cir.1991), the First Circuit considered La. C.E. article 615 comment (d) to determine whether the district court erred in overruling a defendant’s objection to exempting a police officer from the sequestration order. In Ondelc, the defendant argued that the officer’s testimony was influenced by the prior testimony of six fact witnesses and two police officers. Id. In concluding that the district court did not err in exempting the police officer from the sequestration order, the court noted that the officer was the first witness to testify about the administration of Miranda rights to the defendant; the lack of duress, threats, promises or inducements made to the defendant; and the chain of custody of the defendant’s taped statement. Id. The court also noted that the officer had testified at the suppression hearing and was aware of the defendant’s theory of defense. Id. The court found that there was no prejudice by allowing the officer to remain in the courtroom. Id.
In State v. Holden, 45,038, pp. 12-13 (La.App. 2 Cir. 1/27/10), 30 So.3d 1053, 1063, the Second Circuit found that the district court did not err in exempting a police officer from the sequestration order. The court noted that the defendant did not object at the time the State designated the officer as its case representative. Id. The State called two witnesses to testify before calling the officer to testify. Id. The court noted that the testimony of the State’s witnesses was given in sequential order and that the officer’s testimony was not cumulative of the testimony of the prior witnesses, who testified to their limited roles in the investigation. Id. The officer’s testimony focused on his subsequent investigation 117of the matter, including his interview with the defendant and his handling of evidence obtained in' the matter. Id.
In the present case, Detective DeLarge was the State’s sixth witness. The witnesses who testified before the detective were Officer Walker, the initial investigating officer; Ms. Schwehm, the nurse at Children’s Hospital; Mr. Tran, the manager of the Restaurant; Dr. Bardigan, the emergency room physician at Children’s Hospital; and Dr. Stanton, the victims’ optometrist.
Officer Walker’s testimony centered on his initial investigation at the Restaurant and interviews with the victims at the emergency room. Ms. Schwehm and Dr. Bardigan’s testimony focused on the victims’ appearance ánd treatment at Children’s Hospital’s emergency room. Mr. Tran testified about the party being held at the Restaurant, the altercations that occurred, and his encounter with Ms. Jasper. Dr. Stanton’s testimony concerned *1251 his prior treatment of the victims. Dr. Bardigan and Dr. Stanton also offered expert testimony on the effect bleach would have on a person’s eyes. The victims and all of the defense witnesses testified after Detective DeLarge.
Detective DeLarge’s testimony was not cumulative to the testimony of the witnesses who testified before him. His testimony focused solely on his subsequent investigation of the incident. Detective DeLarge was the first witness to testify about the development of Ms. Jasper as a potential suspect and the identification of Ms. Jasper by the victims. Officer Walker’s testimony was limited to the initial investigation the night of the party. At that point, no information had been obtained about a potential suspect.
There is nothing to suggest that Detective DeLarge’s testimony was influenced by the testimony of the witnesses who testified before him. His | ^testimony was completely distinct from their testimony. Further, Detective DeLarge was the only officer who testified at Ms. Jasper’s preliminary hearing and became aware of Ms. Jasper’s theory of defense through defense counsel’s cross-examination concerning his actions in identifying Ms. Jasper as the alleged perpetrator.
Ms. Jasper asserts that Officer Walker and the experts’ testimony aided Detective DeLarge in his testimony regarding how he formed his case and the fact that bleach was the chemical thrown. She relies on State v. Lopez, 562 So.2d 1064 (La.App. 1st Cir.1990). In Lopez, the First Circuit found that the district court erred in allowing the State’s selected agent, who was a State’s witness, to remain in the courtroom during the trial without requiring him to testify as the first witness. Id. at 1066; See La. C.E. art. 615, comment (d). The case agent was the officer who conducted the pat down search of the defendant and found the illegal substance on him. Id. at 1065. In reversing the conviction, the court explained that the officer was a principal witness against the defendant in the case and the State’s case depended almost completely on the credibility of the law enforcement representative. Id. at 1066-67. Further, the court stated that the agent testified after a key prosecution witness, who made the initial traffic stop of the defendant. Id. Thus, the agent received information from the key prosecution witness that aided his own testimony. Id.
The instant case is factually distinguishable from Lopez. Unlike in Lopez, the instant case does not depend entirely on the credibility of the State’s agent, Detective DeLarge. Rather, this case, in most respects, relies on the testimony of the victims who testified after Detective De-Large. Also unlike in Lopez, Detective DeLarge did not receive information that would aid his testimony in any way from li9the witnesses who testified before him. Contrary to Ms. Jasper’s contention, Detective DeLarge mentioned in the preliminary hearing that bleach was the chemical thrown by Ms. Jasper. Also in Detective DeLarge’s application for an arrest warrant, he stated that Ms. Jasper threw bleach on the victims. Thus, when Detective DeLarge heard Officer Walker and the other experts relay this information again at trial it did not aid him with his testimony in any way.
As in Ondek and Holden, we find Ms. Jasper was not prejudiced by the district court allowing the officer to remain in the courtroom. Stated otherwise, the district court did not err when it overruled Ms. Jasper’s objection to the exemption of Detective DeLarge from the sequestration order. This assignment of error is without merit.

*1252
Assignment of Error Number 3

In this assignment of error, Ms. Jasper contends that the district court imposed an unconstitutionally excessive sentence and failed to consider all the factors provided in. La.C.Cr.P. art. 894.1. This court in State v. Boudreaux, 11-1345, pp. 5-6 (La.App. 4 Cir. 7/25/12), 98 So.3d 881, 884-85, noted the following well-settled principles that govern our review of a defendant’s excessive sentence claim:
• Article l[sic], Section 20 of the Louisiana Constitution of 1974 provides that “No law shall subject any person ... to cruel, excessive, or unusual punishment.”
• On appellate review of an excessive sentence claim, the relevant question is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion. State v. Walker, 00-3200, p. 2 (La.10/12/01), 799 So.2d 461, 462.
• The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D). State v. Robinson, 11-0066, p. 17 (La.App. 4 Cir. 12/7/11), 81 So.3d 2090, 99; State v. Major, 96-1214 (La.App. 4 Cir..3/4/98), 708 So.2d 813, 819.
• An appellate court reviewing an excessive sentence claim must determine whether the trial court adequately complied with the statutory sentencing guidelines set forth in La.C.Cr.P. art. 894.1, as well as whether the particular circumstances of the case warrant the sentence imposed. State v. Trepagnier, 97-2427 (La.App. 4 Cir. 9/15/99), 744 So.2d 181, 189; Stale v. Black, 98-0457, p. 8 (La.App. 4 Cir. 3/22/00), 757 So.2d 887, 891.
• The articulation of the factual basis for a sentence is the goal of Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, resentencing is unnecessary even when there has not been full compliance with Art. 894.1. State v. Lanclos, 419 So.2d 475, 478 (La.1982); State v. Davis, 448 So.2d 645, 653 (La.1984) (the trial court need not recite the entire checklist of article 894.1, but the record must reflect that it adequately considered the guidelines).
• If the appellate court finds the trial court adequately complied with Article 894.1, it then must determine whether the sentence imposed is too severe in light of the particular defendant and the particular circumstances of the case,' “keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged.” State v. Landry, 03-1671, p. 8 (La.App. 4 Cir. 3/31/04), 871 So.2d 1285,1239.
• A trial judge has broad discretion when imposing a sentence, and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. State v. Cann, 471 So.2d 701, 703 (La.1985).
• Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). For legal sentences imposed within the range provided by the legislature, a trial court abuses its discretion only when it contravenes the prohibition of excessive punishment in La. Const, art. I, § 20, i.e., when it imposes “punishment disproportionate to the offense.” State v. Soraparu, 97-1027 (La.10/13/97), 703 So.2d 608.
• A sentence, although within the statutory limits, is constitutionally excessive if it is “grossly out of proportion to the severity of the crime” or is “nothing more than the purposeless and needless *1253 imposition of pain and suffering.” State v. Caston, 477 So.2d 868, 871 (La.App. 4th Cir.1985).
The penalty for aggravated battery is set forth in La. R.S. 14:34(B), which provides that “[w]hoever commits an aggravated battery shall be fined not more fythan five thousand dollars, imprisoned with or without hard labor for not more than ten years, or both.” The district court in this case sentenced Ms. Jasper to four years at hard labor on each count of aggravated battery. Before the sentencing hearing, the district court ordered a pre-sentence investigation (“PSI”).
At the sentencing hearing, the district court heard argument from both defense counsel and the State. The district court also allowed Ms. Jasper to produce a witness to testify in support of leniency. In sentencing Ms. Jasper, the district court noted that it considered the PSI, in which Ms. Jasper gave a different version of the events than what she testified to at trial. The district court further noted that Ms. Jasper showed no remorse for the incident and recognized that the victims suffered permanent damage to their eyes. While Ms. Jasper did not have any prior convictions, the PSI report indicated that Ms. Jasper had five prior arrests-disturbing the peace in 1998, second degree injury to a child in 2006, two counts of simple battery in 2009, and simple burglary in 2011. In light of these factors, the district court’s imposition of a sentence of four years at hard labor, without benefit of probation or suspension of sentence, is not excessive.
Ms. Jasper argues that the district court erred when it did not allow her to review • the PSI report for errors. Although a defendant is guaranteed the right to contest allegations and statements in a PSI report and additional information to which the sentencing court was exposed, defense counsel must make a timely request before sentencing for access to the PSI report and must make some showing that the report contains materially false or misleading information prejudicial to the defendant. State v. Boone, 364 So.2d 978, 983 (La.1978); State v. Coleman, 574 So.2d 477, 480 (La.App. 2nd Cir.1991).
|22In this case, defense counsel, stated to the district court during the sentencing hearing, and just before sentencing, that Ms. Jasper disagreed with the PSI report and the chronology of events. The district court judge, however, cut defense counsel off and sentenced Ms. Jasper. While Ms. Jasper raised this issue on appeal, she failed to identify what errors the PSI report contained.[10] Thus, she failed to establish that the PSI contained materially false or misleading information that was prejudicial to her. We thus find this assignment of error lacks merit.

DECREE

For the foregoing reasons, the defendant’s convictions and sentences are affirmed.
AFFIRMED.

.Although La. R.S. 14:34 does not indicate that the sentences are to be served without benefit of probation or suspension of sentence, the district court referenced La.C.Cr.P. art. 893, which provides that a "court shall not suspend the sentence of a conviction for a crime of violence as defined in La. R.S. 14:2(B) ... (5).” La. R.S. 14:2(B)(5) provides that aggravated battery is considered a crime of violence.

. While Sha’Ron and Corianna refer to LaSheba as their "cousin,” she is only a friend and not a relative.

. Paris and D’Miria are the victims of the second fight that occurred that night. At the time of the incident, Paris was sixteen-years-old and D’Miria was eighteen-years-old.

. Paris and D’Miria’s optometrist, Dr. Seth Stanton, testified that he performed eye exams on both sisters before the incident at the Restaurant, and their exams were normal. He stated that they were slightly near-sighted.

. Mr. Tran, in contrast, testified that the one parent he spoke with regarding the fight on the balcony was irate, loud, and upset. The párent said that her daughter had been injured in a fight, and she wanted him to call the police. He told the parent to wait outside, and he called the police. About fifteen minutes later, the parent came back into the Restaurant yelling.

. Paris and D’Miria, in contrast, testified that there were no cleaning supplies or utensils in the lobby area of the Restaurant.

. Mr. Tran, on the other hand, testified that there was no bleach or cart in the lobby area before the fight occurred. He explained that the Restaurant did not store or use bleach during meal service. The Restaurant also did not have any janitorial carts and that any carts they had were kept in the kitchen in the back of the Restaurant away from the elevator and stairs. Further, all cleaning supplies were kept in the dish room behind the kitchen.

. Paris denied throwing a bottle of bleach at anyone. D'Miria denied fighting or throwing anything at anyone.

. On appeal, Ms. Jasper notes that Detective DeLarge went to Lake Area High School days after talking with Paris and asked the staff which student goes by “Pinky” and then asked the staff for Pinky’s mother’s name. Ms. Jasper emphasizes that Jarameshia, also known as "Pinky,” did not attend this high school.

. At oral argument before this court on September 5, 2014, defense counsel was asked to identify the errors in the PSI report. Defense counsel again failed to articulate any errors.