Assignments of Error
On appeal, the defendant asserts three assignments of error:
1. The State failed to prove beyond a reasonable doubt that the defendant was guilty of second-degree kidnapping in violation of La. R.S. 14:44.1.
2. The trial court erred in denying the defendant his due process right to a fair trial which constitutes reversible error.
3. The trial court erred in imposing excessive sentences upon the defendant which constitutes an abuse of discretion.
Sufficiency of the Evidence (Second -Degree Kidnapping)
In his first assignment of error, the defendant challenges the sufficiency of the evidence to support his conviction for second-degree kidnapping. In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This Court, in State v. Gibson , 15-1390, p.5 (La. App. 4 Cir. 7/6/15), 197 So.3d 692, 696 stated that the Jackson standard is legislatively embodied in La. C. Cr. P. art. 821(B), which provides that "a post-verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty."
However, a reviewing court is not permitted to consider just the evidence most favorable to the prosecution, but must consider the record as a whole. Id. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution should be adopted. Id. Additionally, "a factfinder's credibility decision should not be disturbed unless it is clearly contrary to the evidence." Id.
*1059 La. R.S. 14:44.1 provides, in pertinent part:
A. Second degree kidnapping is the doing of any of the acts listed in Subsection B wherein the victim is:
(1) Used as a shield or hostage;
(2) Used to facilitate the commission of a felony or the flight after an attempt to commit or the commission of a felony;
(3) Physically injured or sexually abused;
(4) Imprisoned or kidnapped for seventy-two or more hours, except as provided in R.S. 14:45(A)(4) or (5) ; or
(5) Imprisoned or kidnapped when the offender is armed with a dangerous weapon or leads the victim to reasonably believe he is armed with a dangerous weapon.
B. For purposes of this Section, kidnapping is:
(1) The forcible seizing and carrying of any person from one place to another; or
(2) The enticing or persuading of any person to go from one place to another; or
(3) The imprisoning or forcible secreting of any person.
The defendant's primary contention is that the State failed to prove beyond a reasonable doubt that a kidnapping occurred. The defendant contends that he never carried "any person from one place to another" as required by La. R.S. 14:44.1(B)(1). However, only one of the three enumerated acts in La. R.S. 14:44.1 must have occurred to satisfy the statute's requirements. As we did in State v. Gibson , we find that the defendant's actions clearly satisfy La. R.S. 14:44.1(B)(3) - namely, that he "imprisoned or forcibly secreted" A.S. 15-1390, p. 7, 197 So.3d at 698. This court in State v. Williams , 2002-0260 (La. App. 4 Cir. 3/12/03), 842 So.2d 1143, found that moving of victim within their home satisfied this very element.
Here, the record shows that the defendant bound, gagged, and blindfolded A.S. before hiding her under a pile of clothes in the laundry room. These actions are clearly sufficient to show that defendant "imprisoned or forcibly secreted" her. For these reasons, we find that there was sufficient evidence to convict defendant of second-degree kidnapping.
Denial of Due Process Rights
In his second assignment of error, the defendant sets forth several arguments revolving around the central assertion that he was denied his due process right to a fair trial. We address each argument individually below.
Prejudicial Comments and Bias by the Court
The defendant asserts that the trial court made disparaging remarks to defense counsel that prejudiced the jury against the defendant.
Article I, Section 16 of the Louisiana Constitution grants the defendant the right "to an impartial jury and a fair trial." La. Const. art. I, § 16. During a jury trial, the judge must act as a neutral administrator of the law. State v. Diggins , 12-0015, p. 13 (La. App. 4 Cir. 10/23/13), 126 So.3d 770, 784. In discharging this duty, the judge must refrain from commenting upon the facts of the case in the presence of the jury, either by commenting on evidence or testimony or by giving an opinion as to what has been presented, proved, or not proved. La. C.Cr.P. art. 772. If, during trial, a defendant believes that the trial court commented improperly on the evidence, or made prejudicial comments in the presence of the jury, then defendant should object or move for a mistrial. La. C.Cr.P. arts. 770, 775. A motion for mistrial *1060 or a contemporaneous objection to the alleged prejudicial comments or judicial bias preserves the issue for review on appeal. La. C.Cr.P. art. 841.
Because an appellate court reviews claims of prejudicial comments and bias using a harmless error analysis, the relevant inquiry is whether the guilty verdict actually rendered in this trial was surely unattributable to the error. Diggins , 12-0015, p.14, 126 So.3d at 784. Moreover, the cumulative effect of harmless errors does not warrant the reversal of a conviction or sentence. State v. Smith , 11-0091, p.21 (La. App. 4 Cir. 7/11/12), 96 So.3d 678, 691. In order to constitute reversible error, the judge's improper comments must be such as to have influenced the jury and contributed to the verdict, thereby denying the defendant a fair trial. Id.
Defendant cites several instances of alleged prejudicial comments or disparaging remarks by the trial court towards defense counsel, as follows:
1. As counsel was presenting his request for an attachment, the Court said, "Okay, this is ridiculous. First of all, let me say this: you go from A to Z, right. So why don't you start at A? If you're asking me to issue a subpoena to the gentleman at his employment - and if you know the address - that's all you have to do. And you know you haven't even completed your sentence ..."
2. After more argument about the witness, "[Defense Counsel], have a seat, sir. You are about two seconds away from me holding you in contempt again. Right. Let me be honest with you. So I'm not going to play this game with you in this trial today. So I am putting you on notice that you need to conduct yourself professionally and ethically throughout this trial. Now, I will attempt not to embarrass you in front of this jury. I will ask that you not embarrass yourself. But, [Defense Counsel], I'm telling you - and I'm putting you on notice right now - that I'm not going to deal with this."
3. During cross-examination of A.S.'s mother, the following exchange occurred:
Court: You have to let her finish answering the question. You're cutting her off. This is my last time instructing you of this, [Defense Counsel].
[Defense Counsel]: What's the instruction?
Court: That you have to let her finish answering the question. She can't ...
[Defense Counsel]: I agree.
4. During cross-examination of Det. Ross, the following exchange occurred:
Court: All right. Hold on one second. So you need to ask a question, 'cause those are statements. So I'm going to need you to direct a question to the witness.
[Defense Counsel]: Sure. I consider her an adverse witness and I'm cross-examining her.
Court: She's not been determined to be adverse. So you need to ask a question.
[Defense Counsel]: Can I ask her leading questions, as a direct cross-examination?
Court: No. You have to ask her a question, [Defense Counsel]. And then I'll take it question by question. If they have an objection, then I'll rule on it. But right now you're making statements. So I need you to ask a question.
[Defense Counsel]: Ok.
*1061 5. After discussion about service on a witness, the following exchange occurred:
Court: Let me just say a few things, [Defense Counsel]. Number one - and I want to be clear - because you're not a competent attorney. But I do want to be clear that you're speaking in circles. And some of the things you're saying don't really make much sense. Ok.
[Defense Counsel]: I'm sorry.
Court: [Defense Counsel], you're very disingenuous. And it is ridiculous that you would stand -
[Defense Counsel]: Now...
Court: before this Court and not -
[Defense Counsel]: May I finish?
Court: - be truthful.
6. Next instance:
Court: And it is not the first time. It is not the second time.
[Defense Counsel]: Oh no. No, ma'am.
Court: And I take extreme offense -
[Defense Counsel]: Me, too.
Court: a - to the way you practice law, to your unprofessionalism. Let me tell you -
The trial court has a duty to maintain control over the questioning of witnesses and presentation of evidence to the jury. In addressing similar comments made by the trial court in State v. Jones , this Court noted,
A trial judge has the responsibility to exercise control over the nature of the questions posed by counsel to ensure fairness and judicial economy. An unavoidable risk of this duty is that in the heat of a trial, adverse rulings may incorrectly appear to reflect the judge's opinion of a party, witness or theory of the case. Experienced trial lawyers aware of this risk weigh seriously these concerns in phrasing questions to a witness. Thus, the risk exerts a moderating influence on the excesses of advocacy.
State v. Jones , 593 So.2d 802, 804 (La. App. 4th Cir. 1992).
In Jones , the defendant complained of the trial court's comment that defense counsel's questioning of a witness was "out of line." Id at 803. Similarly, in this case, the bulk of defense counsel's complaints reference the trial court's comments that defense counsel was unprofessional. In this case, as in Jones , we find that these comments do not evince impartiality or bias. "The challenged remark of the trial judge, whether inappropriate or not, does not rise to the level of a prejudicial error which requires reversal. Standing alone, the remark does not evidence the judge's abandonment of neutrality which is required to constitute prejudicial error." Id at 804.
Upon our review of the cited comments and remarks together with the overwhelming evidence, we find no merit to the defendant's argument that the trial court's comments prejudiced the jury and contributed to the verdict.
The defendant further asserts that the trial court displayed bias toward A.S. when she was allowed to walk into court and take a piece of candy from the minute clerk's desk similar to State v. Cook , 485 So.2d 606 (La. App. 4 Cir. 1986). In Cook , this Court held that the trial judge's decision to reward the child witness with candy in the presence of the jury could be viewed by the jury as an indirect comment on this witness' veracity, which amounted to reversible error. Id at 609. However, the facts here are distinguishable. In the case sub judice , the State had A.S. briefly appear in court to show her availability to testify. Before leaving, A.S. took candy from the minute clerk's desk on her own initiative, without prompting or comment *1062 by the trial judge. Accordingly, we find no merit to defendant's argument that bias influenced the jury and denied him a fair trial.
Denial of Defense
Defendant next asserts that he was denied a complete defense because he was deprived of his right to confront or cross-examine A.S.
Article I, Section 16 of the Louisiana Constitution also grants the defendant the right "to confront and cross-examine the witnesses against him, to compel the attendance of witnesses, [and] to present a defense." La. Const. art. I, § 16. The Sixth Amendment to the United States Constitution similarly bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." Crawford v. Washington , 541 U.S. 36, 54-55, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). However, public policy considerations may take precedence over face-to-face confrontation. Maryland v. Craig , 497 U.S. 836, 849, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990).
Louisiana is one of several states that have established procedures to protect child victims of sexual abuse who testify at trial from unnecessary trauma. State v. McClendon , 17-0160, p.21 (La. App. 4 Cir. 9/27/17), 228 So.3d 252, 265. Furthermore, the Louisiana Supreme Court has found a defendant's right to confrontation is preserved so long as the witness is available to testify. State v. Kennedy , 05-1981, pp.22-23 (La. 5/22/07), 957 So.2d 757, 773, cert granted , 552 U.S. 1087, 128 S.Ct. 829, 169 L.Ed.2d 625, judgment reversed on other grounds , 554 U.S. 407, 128 S.Ct. 2641, 171 L.Ed.2d 525. Confrontation clause violations are subject to a harmless error analysis. State v. Patterson , 16-1104, p. 20 (La. App. 4 Cir. 3/7/18), 241 So.3d 433, 447.
In the matter before us, the State announced, and the trial court acknowledged, that A.S. was available to testify, yet the defendant did not call her. We find no merit to defendant's argument that he was deprived of his right to confront A.S.
Defendant further asserts that he was denied a complete defense because he was deprived of his right to compulsory process.
Article I, Section 9 of the Louisiana Constitution provides the defendant with the right to compulsory process for obtaining witnesses in his favor. La. Const. art. I, § 9. This right includes the right to demand subpoenas and the right to have them served. State v. Lamizana , 16-1017, p. 2 (La. App. 4 Cir. 5/31/17), 222 So.3d 58, 60. Yet, the right to compulsory process is predicated on the exercise of due diligence by the defendant. State v. Hattaway , 180 La. 12, 18, 156 So. 159, 161 (1934). This Court has recognized that for a defendant to demonstrate error, he must prove that the absent witness testimony would have been favorable to the defense as well as the possibility of a different result if the witness were to testify. State v. Duplessis , 00-2122, pp. 12-13 (La. App. 4 Cir. 3/28/01), 785 So.2d 939, 947. Compulsory process violations are also subject to a harmless error analysis. State v. Jackson , 12-0090, p. 14 (La. App. 4 Cir. 4/24/13), 115 So.3d 1155, 1166.
In this case, the defendant alleges that the trial court failed to assist him in serving instanter subpoenas for two witnesses, Donald Smith and David Rue, because the court declined to permit service "wherever found." Despite this prohibition, a special process server served Mr. Smith on his route as a garbage collector, rather than at the local headquarters for his company, *1063 on August 10, 2017, the second day of the trial. Mr. Smith refused to accept service but subsequently appeared in court on August 11, 2017, with the State's assistance. However, the defendant did not call Mr. Smith to testify. The defendant's argument here is moot.
The defendant further alleges that the trial court failed to assist him in issuing a second instanter subpoena for David Rue after learning of the witness' location at a homeless shelter in Monroe, Louisiana on August 10, 2017. The court denied the second motion for instanter subpoena for several reasons, including defense counsel's failure to exercise due diligence, noting the trial was continued no less than fifteen times before the current setting; the Orleans Parish Sheriff's Office advised that they would not be able to serve the witness there; and counsel had not moved to appoint a special process server for that subpoena. Defense counsel's request to proffer was also denied.
More importantly, the defendant made no showing that Mr. Rue's testimony would be either favorable or result in a different outcome, let alone both. In light of the harmless error analysis which guides our examination, the defendant's assertion that he was deprived of his right to compulsory process is without merit.
Evidentiary Errors
Defendant next asserts that he was denied his due process right to a fair trial when the trial court improperly admitted the CAC video into evidence without the State laying a proper foundation pursuant to La. R.S. 15:440.1 et seq. At issue here are La. R.S. 15:440.4 and 15:440.5. La. R.S. 15:440.4 states, in relevant part:
A. A videotape of a protected person may be offered in evidence either for or against a defendant. To render such a videotape competent evidence, it must be satisfactorily proved:
(1) That such electronic recording was voluntarily made by protected person.
(2) That no relative of the protected person was present in the room where the recording was made.
(3) That such recording was not made of answers to interrogatories calculated to lead the protected person to make any particular statement.
(4) That the recording is accurate, has not been altered, and reflects what the protected person said.
(5) That the taking of the protected person's statement was supervised by a physician, a social worker, a law enforcement officer, a licensed psychologist, a medical psychologist, a licensed professional counselor, or an authorized representative of the Department of Children and Family Services.
La. R. S. 15:440.5 also states, in relevant part:
A. The videotape of an oral statement of the child made before the proceeding begins may be admissible into evidence if:
(1) No attorney for either party was present when the statement was made;
(2) The recording is both visual and oral and is recorded on film or videotape or by other electronic means;
(3) The recording is accurate, has not been altered, and reflects what the witness or victim said;
(4) The statement was not made in response to questioning calculated to lead the child to make a particular statement;
(5) Every voice on the recording is identified;
(6) The person conducting or supervising the interview of the child in the recording is present at the proceeding and available to testify or be cross-examined by either party;
*1064 (7) The defendant or the attorney for the defendant is afforded an opportunity to view the recording before it is offered into evidence; and
(8) The child is available to testify.
The defendant states that the State failed to lay a proper foundation for the CAC video pursuant to La. R.S. 15:440.4 and 15:440.5(6) because neither Dan Dooley nor his supervisor was available to testify; however, the defendant misinterprets the provision. Under La. R.S. 15:440.5(6), it is only necessary that someone supervising the interview be available to testify. We find that Det. Ross's attendance was sufficient to fulfill this requirement.
Accordingly, the defendant's argument that he was denied his due process right to a fair trial because of the erroneous introduction of the CAC video is without merit.
Defendant further asserts that he was denied his due process right to a fair trial when the trial court denied his request to recall his girlfriend, Brittany Coulter, to authenticate her medical record for admission into evidence after she obtained it from Touro Infirmary during the court's lunch recess following her testimony.
Louisiana courts have long permitted the recall of witnesses even after they have been dismissed after direct and cross-examination. State v. Griffin , 288 So.2d 636, 638 (La. 1974). However, the trial court is vested with great discretion and may deny permission for a party to recall a witness if it will cause undue delay or if the party had a reasonable opportunity on the witness's first appearance to question him about the matter for which his recall is sought. Id. Further, the right to present a defense does not require the trial court to permit the introduction of evidence that is irrelevant or has so little probative value that it is substantially outweighed by other legitimate considerations in the administration of justice. State v. Fernandez , 09-1727, p.14 (La. App. 4 Cir. 10/6/10), 50 So.3d 219, 229. A trial court is vested with great discretion in determining whether a party has laid a proper foundation, and its ruling as to admissibility will not be disturbed absent an abuse of discretion. State v. Cyrus , 11-1175, p.20 (La. App. 4 Cir. 7/5/12), 97 So.3d 554, 565.
The defendant contends that Ms. Coulter's medical record supported his misidentification as the perpetrator because the perpetrator gave chlamydia to A.S. and Ms. Coulter did not have it despite her intimate relationship with him. The trial court denied the request to recall, noting that the defendant had ample opportunity to obtain Ms. Coulter's medical record prior to trial and could have presented the record while Ms. Coulter was on the stand. Accordingly, we find no error in the trial court's evidentiary rulings.
Excessive Sentencing
In his third assignment of error, the defendant contends the trial court erred in imposing excessive sentences. At the outset, it is important to note that the defendant neither contemporaneously objected nor filed a motion to reconsider following the trial court's imposition of sentences. La. C. Cr. P. art. 881(E) (providing that the failure to make or file a motion to reconsider sentence shall preclude the defendant from raising an objection to the sentence on appeal or review). Strictly interpreting La. C.Cr.P. art. 881.1(E), this court has held that the failure to object to a sentence at imposition or to file a motion to reconsider sentence will preclude a defendant from raising on appeal even a claim of constitutional excessiveness. State v. Pete , 17-0442, p.3 (La. App. 4 Cir. 12/13/17), 234 So.3d 1006, 1008. However, *1065 given the patent error of the excessive sentence for the aggravated burglary conviction, we elect to review this claim out of an abundance of caution.
Article I, Section 20 of the Louisiana Constitution prohibits not only "cruel" and unusual punishment, but excessive punishment as well. La. Const. art. I, § 20. A sentence "is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment and is nothing more than the purposeless imposition of pain and suffering and is grossly out of proportion to the severity of the crime." State v. Dorthey , 623 So.2d 1276, 1280 (La. 1993). Because the trial court has broad discretion in imposing a sentence within statutory limits, a reviewing court can only set it aside if it is clearly excessive. State v. Cook , 95-2784, p. 3 (La. 5/31/96), 674 So.2d 957, 959.
In reviewing an excessive sentence claim, the appellate court must determine whether the trial court judge has complied with La. C. Cr. P. art. 894.1, and whether the circumstances of the case warrant the sentence imposed, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense. State v. Jasper , 14-0125, p. 20 (La. App. 4 Cir. 9/17/14), 149 So.3d 1239, 1252 ; State v. Bonicard , 98-665 (La. App. 4 Cir. 8/4/99), 752 So.2d 184, 185. However, this Court has held that if the record supports a conviction and sentence, a trial court's failure to strictly comply with La. C.Cr.P. art. 894.1 does not merit remand and resentence. State v. Quezada , 13-1318, p. 7 (La. App. 4 Cir. 5/21/14), 141 So.3d 906, 913.
The court must start with the presumption that a mandatory minimum sentence is constitutional, which the defendant must rebut by proving that he is exceptional. State v. Green , 17-0520, p. 17 (La. App. 4 Cir. 11/15/17), 231 So.3d 756, 758. This Court has articulated that exceptional "means that because of unusual circumstances he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case." Id. If the mandatory minimum sentence is constitutionally excessive, then a downward departure is required under Dorthey . This Court has consistently refused to consider a defendant arguing his age and first-time offender status as "exceptional" when the crime committed is violent in nature. See Green , 17-0520, p.5, 231 So.3d at 758 ; State v. Ladd , 15-0772 (La. App. 4 Cir. 4/13/16), 192 So.3d 235.
In the present case, the defendant asserts that his sentences are constitutionally excessive because the judge failed to consider any mitigating factors, such as his age and his first-time offender status. Accordingly, the defendant has failed to rebut the presumption that the mandatory minimum sentences are constitutionally excessive because his age and first-time offender status do not make him exceptional, given that the crimes he committed are all violent in nature. Additionally, the maximum sentences for each charge were appropriate because the defendant was such an egregious violator of each offense. Notwithstanding the patent error of the excessive sentence for aggravated burglary, the defendant's argument that the trial court erred in imposing excessive sentences for each of the offenses is without merit.
CONCLUSION
Considering the foregoing reasons, this Court affirms the defendant's convictions. Further, this Court affirms the defendant's sentences on all counts except *1066 for count three (aggravated burglary), which exceeds the statutory limits. Therefore, the sentence for aggravated burglary is vacated and the matter is remanded for resentencing on that one count. All other sentences are affirmed.
CONVICTIONS AFFIRMED; REMANDED WITH INSTRUCTIONS