969 So.2d 452 (2007)
Jack Ray SMITH, Appellant,
v.
STATE of Florida, Appellee.
No. 1D06-5319.
District Court of Appeal of Florida, First District.
November 15, 2007.
*453 Nancy A. Daniels, Public Defender, and Steven L. Seliger, Assistant Public Defender, Tallahassee, for Appellant.
Bill McCollum, Attorney General; Trisha Meggs Pate, Bureau Chief of Criminal Appeals; and Joshua R. Heller, Bryan Jordan, and Elizabeth F. Duffy, Assistant Attorneys General, Tallahassee, for Appellee.
ROBERTS, J.
The appellant, Jack Ray Smith (Smith), was convicted of aggravated battery with a deadly weapon when, as part of an attempted sexual battery, he splashed household bleach in his victim's eyes, nose, and mouth in an attempt to subdue her. In the instant case, he appeals the denial of his motion for judgment of acquittal. Because the determination as to whether an object not ordinarily considered a weapon has been used in a manner likely to cause death or great bodily harm is a question of fact for jury determination, we affirm.
The victim worked for Smith at hotels doing "odd jobs" such as lawn maintenance and moving furniture. One of those jobs was moving items from a hotel in Panama City to a person in Chipley who had purchased them. On the night of the crime, Smith and the victim returned to Chipley around 10:30 or 11:00 p.m. After finishing the delivery, Smith asked the victim to return to his house to have a couple of drinks and relax. Smith lived in a sunroom behind the garage of his mother's home.
At the house, they sat in the sunroom and drank whiskey and cola. The victim asked for the payment for her work and Smith gave her $30. The victim then walked to her stepfather's house nearby and gave him the money to repay a debt she owed to him.
At the urging of Smith, the victim returned to his house. After a short time, she indicated that she was tired and was going home. Smith then told the victim that she was not leaving and that he "didn't give her $30 for nothing." She offered to retrieve the money from her stepfather and return it to Smith. He replied that he didn't want the money, but rather "wanted something else and [the victim] wasn't going to leave until he got it," which she understood to mean that Smith wanted a "sexual favor." She repeatedly tried to leave but Smith blocked the door each time.
The victim attempted to use the telephone to call for help, but Smith got "really angry," grabbing the telephone from her hand and ripping the cord out of the wall. She pulled down the blanket that was serving as a curtain and was yelling for help, but no one heard.
Smith then attacked her, punching her in the face, beating her to the ground, and choking her. At one time, she felt like she *454 was "blacking out, passing out, . . . like [she] was dying." The victim got away and sought refuge under a laundry sink in the garage. When she would not come out, Smith grabbed a container of household bleach and threatened to throw bleach on her. When she still would not come out, he "sloshed it in [her] face about three or maybe four times." The bleach got into her eyes, burning them so that she could not open them, and into her mouth and throat, causing chemical burns. After the bleach failed to cause the victim to come out from under the sink, Smith threatened to get gasoline or lighter fluid and light her on fire. Because those materials were readily available in the garage, she came out.
Smith made her return to his room and undress. Smith then shifted his attention to the blanket that had fallen from the window and she made another attempt to escape. After another prolonged struggle, she was able to exit the garage and run down the street to her stepfather's house.
After giving her statement to the police and trying to recover on her own, the victim went to the emergency room complaining of burning on her face and in her eyes and of swelling in her throat to the extent that she could hardly swallow. She was treated by flushing out each of her eyes with an entire I.V. bag.
As a result of the events described above, Smith was charged with aggravated battery with a deadly weapon and false imprisonment.
At trial, in addition to the evidence presented by the victim, one of the investigating police officers testified that the bleach bottle used in the incident had not been collected into evidence, but a similar bottle label was produced in court. The label specifically warned that it was toxic and corrosive, that it should not come into contact with a person's eyes, mouth or throat, and that it could cause severe burns. The label further warned "corrosive, dangerous if swallowed" and directed a person to seek medical attention if it got into one's eyes.
At the conclusion of the state's case, the defense moved for a judgment of acquittal on the aggravated battery charge, arguing that the state failed to provide any evidence that the bleach was a deadly weapon. The defense further argued that the state did not provide expert testimony regarding how bleach affected the body or that it was likely to cause death or great bodily harm. The trial court denied the motion and the defense preserved the issue for appeal.
Smith was convicted on all counts and now appeals the trial court's denial of his motion for judgment of acquittal.
In reviewing a motion for judgment of acquittal, a de novo standard of review applies. Pagan v. State, 830 So.2d 792 (Fla.2002).
Section 784.045, Florida Statutes (2005), provides, in pertinent part:
(1)(a) A person commits aggravated battery who, in committing battery:
1. Intentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement; or
2. Uses a deadly weapon.
In this case, Smith was charged with violating subsection (1)(a)2, use of a deadly weapon. A weapon is a deadly weapon if it is used or threatened to be used in a way likely to produce death or great bodily harm. See Fla. Std. Jury Instr. (Crim.) 8.4. A "deadly weapon," within the meaning of the aggravated battery statute, is "1) any instrument which, when used in the ordinary manner contemplated by its design and construction will or is likely to cause great bodily harm, or 2) any instrument likely to cause great bodily harm because of the way it is used during a *455 crime." V.M.N. v. State, 909 So.2d 953, 954 (Fla. 4th DCA 2005).
Whether a weapon is a deadly weapon is a question of fact that should be submitted to the jury "to be determined under all the circumstances, taking into consideration the weapon and its capability for use." Id. (quoting E.J. v. State, 554 So.2d 578, 579 (Fla. 3d DCA 1989)). Additionally, great bodily harm is "distinguished from slight, trivial, minor, or moderate harm, and as such does not include mere bruises as are likely to be inflicted in simple assault and battery." C.A.C. v. State, 771 So.2d 1261, 1262 (Fla. 2d DCA 2000).
Smith relies on D.C. v. State, 567 So.2d 998 (Fla. 1st DCA 1990), and C.A.C., supra, to support his position that the state did not provide sufficient evidence that the bleach, as used, was likely to cause great bodily harm. These cases, however, are distinguishable because in both, the state presented no evidence that the object was used in a manner likely to cause great bodily harm.
In the instant case, evidence that the bleach was used in a manner likely to cause great bodily harm existed in the form of the victim's testimony that the bleach was "sloshed" into her face three or four times and that it got into her eyes, mouth, and throat, making her unable to open her eyes and constricting her throat, making breathing difficult. Additionally, she testified that she later had to go to the emergency room. The testimony required for the jury to make a determination is testimony that bleach was used, not the effect of its use. The jury, as fact finder, could then determine whether such use was likely to cause great bodily harm.
For example, if Smith had not sloshed the bleach in her face, but instead had poured gasoline on her and lit it, the jury would be entitled to determine whether this was likely to cause great bodily harm. The determination of whether fire can cause great bodily harm would still be in the province of the jury even without testimony, expert or lay.
In the instant case, the investigating officer testified that the bleach label stated that the bleach was toxic and corrosive, should not come into contact with a person's eyes, mouth or throat, and could cause severe burns. The label further warned that the bleach was "corrosive, dangerous if swallowed."
Since the jury, as fact-finder, did determine that the bleach, as used by Smith, was a deadly weapon, we AFFIRM.
KAHN and WEBSTER, JJ., concur.