# IN THE SUPREME COURT, STATE OF WYOMING

# 2025 WY 20

### OCTOBER TERM, A.D. 2024

**February 18, 2025**

GLENN TYRONE GREEN,

Appellant
(Defendant),

v.                                                                    S-24-0196

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Natrona County*
The Honorable Daniel L. Forgey, Judge

*Representing Appellant:*
>  Office of the State Public Defender:  Brandon Booth, Wyoming State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Jeremy Meerkreebs, Assistant Appellate Counsel.

*Representing Appellee:*
>  Bridget Hill, Wyoming Attorney General; Jenny L. Craig Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Kristine D. Rude, Assistant Attorney General.

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

**\*** An Order Substituting Brandon Booth for Ryan Roden was entered on October 10, 2024.

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**JAROSH, Justice.**

[¶1]     After throwing liquid bleach in the face of a man he accused of being with his wife, Glenn Tyrone Green pled guilty to one count of aggravated assault and battery with a deadly weapon.  Mr. Green appeals his conviction, asserting his plea was not supported by a sufficient factual basis that bleach is a deadly weapon.  We affirm.

### *ISSUES*

[¶2]     Mr. Green states a single issue, which we restate as:

> Did the district court commit plain error when it accepted Mr. Green's guilty plea to aggravated assault and battery with a deadly weapon without obtaining a sufficient factual basis?

### *FACTS*

[¶3]     On July 29, 2023, Mr. Green entered Joel Ingwerson's residence through a sliding glass door without an invitation and, according to a witness, stated, "[S]urprise, mother****er."  Mr. Green approached Mr. Ingwerson, who was seated in a recliner, and said to him, "I know you've been with my wife."  Unprovoked, Mr. Green then threw liquid bleach from a paper Pepsi cup at Mr. Ingwerson, splashing him in the face.  Mr. Green also struck Mr. Ingwerson in his face with a BB gun,[1] and said, "Now you are going to die slowly, bitch."  He then left the residence.  Mr. Ingwerson washed his face, flushed his eyes, and called 911.

[¶4]     After officers arrived at the scene, Mr. Ingwerson told a detective Mr. Green threw liquid that smelled like bleach in his face, and it immediately began to burn his face, mouth, and nose.  Mr. Ingwerson described the pain as feeling "like his body was on fire" and the "most pain he has ever gone through."  The detective observed that Mr. Ingwerson "[d]isplayed red, inflamed eyes … [and] swelling to the left side of his face."  At the hospital that same day, Wyoming Medical Center staff reported Mr. Ingwerson's back also "showed signs of chemical irritation."

[¶5]     In addition to interviewing witnesses,[2] police searched Mr. Ingwerson's home pursuant to a warrant.   The evidence technician who processed the scene found bleach on the recliner where Mr. Ingwerson was sitting (from the top of the back rest all the way to the seat) and on Mr. Ingwerson's clothing.  On the floor next to the recliner, the technician found a paper Pepsi cup with clear liquid inside that smelled like bleach.

---

[1] Mr. Ingwerson apparently believed the gun was a 9mm "service pistol."  Law enforcement determined it was a BB gun accurately replicating a Beretta 92, semi-automatic pistol.

[2]  There were two other individuals at the residence at the time of the attack.

1

[¶6]    Mr. Green was charged with one count of unlawful contact under Wyo. Stat. Ann. § 6-2-501(g) (2023) and two felony counts of aggravated assault and battery with a deadly weapon under Wyo. Stat. Ann. § 6-2-502(a) (2023) — one count related to the bleach, and one count related to the BB gun.[3]  After his preliminary hearing, the State dismissed the aggravated assault count related to the BB gun, maintained the aggravated assault charge related to the bleach, and amended the Information to charge Mr. Green with misdemeanor simple battery under Wyo. Stat. Ann. § 6-2-501(d).

[¶7]    At his arraignment, Mr. Green pled guilty to aggravated assault and battery with a deadly weapon pursuant to a plea agreement with the State.  In return, the State dismissed the misdemeanor battery charge and agreed to a "six-year cap" on sentencing.  The plea agreement also contained a "cold plea" provision, whereby if Mr. Green violated the conditions of his bond, failed to cooperate in the preparation of his Presentence Investigation Report (PSI), or otherwise violated the law before sentencing, he would lose the protection of the cap on his prison sentence.  The district court described the charge to which Mr. Green would plead:  "The agreement anticipates a guilty plea to Count One, that alleges on or about July 29th, 2023, in Natrona County, Wyoming, that you did unlawfully attempt to cause or intentionally or [sic] cause bodily injury to another, Joel Ingwerson, with a deadly weapon, bleach."  The court advised Mr. Green of his rights, and Mr. Green entered a plea of guilty.  The following colloquy then occurred:

> THE COURT:  I need to ask you a little bit about what happened here.  Do you swear to tell the truth, the whole truth, and nothing but the truth, so help you God?
> MR. GREEN:  Yes, Your Honor.
> THE COURT:  On or about July 29th of 2023, were you at a location in Natrona County, Wyoming, where you attempted to cause or intentionally or knowingly caused bodily injury to another person?
> MR. GREEN:  Yes, Your Honor.
> THE COURT:  Where did this happen?
> MR. GREEN:  At the residence.
> THE COURT:  What street was that?
> MR. GREEN:  It was in North Casper.
> THE COURT:  And what did you use to try and hurt this other person?
> MR. GREEN:  A BB gun and also bleach.

---

[3] The original Information charged Mr. Green with aggravated assault relating to the bleach, and stated "with a deadly weapon, to wit:  bleach."  However, the charge cites Wyo. Stat. Ann. 6-2-502(a)(i) rather than Wyo. Stat. Ann. 6-2-502(a)(ii).  Nonetheless, the record consistently reflects the circuit court, district court, and the parties all understood Mr. Green was charged with and pled guilty to violating § 6-2-502(a)(ii).

THE COURT: And was there some kind of a dispute that you had with that person?

MR. GREEN: Yes, Your Honor.

THE COURT: [Defense Counsel], would you [have] any objection if I also took notice of the affidavit filed in support of the [I]nformation only to supplement his testimony to help establish a factual basis for the plea?

DEFENSE COUNSEL: No objection, Your Honor.

THE COURT: I'll do so. Overall, Mr. Rosty, is that sufficient?

MR. ROSTY: That's sufficient for the State.

The district court then accepted Mr. Green's plea and found there was a sufficient factual basis to support it. The court also modified Mr. Green's bond to his personal recognizance and ordered a PSI.

[¶8] Mr. Green subsequently violated his plea agreement by failing to assist in the completion of his PSI. The district court revoked his bond and issued a bench warrant for his arrest. After police arrested Mr. Green, the court ordered him held without bond until sentencing. The State also invoked the "cold plea" provision of the plea agreement capping his sentence. After a PSI was completed, the district court sentenced Mr. Green to no less than six and no more than eight years imprisonment.

[¶9] Mr. Green timely appealed to this Court.

## *STANDARD OF REVIEW*

[¶10] When a defendant does not object to the sufficiency of the factual basis of a guilty plea before the trial court, we apply the plain error standard of review. *Lynch v. State,* 2024 WY 79, ¶ 11, 552 P.3d 392, 396 (Wyo. 2024) (citing *Nguyen v. State,* 2013 WY 50, ¶ 8, 299 P.3d 683, 686 (Wyo. 2013) (other citations omitted)). "'Plain error occurs when the alleged error: (1) clearly appears in the record; (2) clearly and obviously violates a clear and unequivocal rule of law; and (3) affects a defendant's substantial right to [his] material prejudice. Failure to establish each element precludes a finding of plain error.'" *Id.,* ¶ 12, 552 P.3d at 397 (quoting *Delarosa v. State*, 2023 WY 22, ¶ 6, 525 P.3d 1024, 1026 (Wyo. 2023)) (internal quotations omitted). When examining whether the district court violated a clear and unequivocal rule of law, this Court considers only "the information in the record at the time the plea was accepted." *Id.* (citing *Mellott v. State,* 2019 WY 23, ¶ 28, 435 P.3d 376, 387 (Wyo. 2019) (citations omitted)). When examining whether the defendant's substantial rights were affected, we may consider the entire record to determine whether there is a sufficient basis to support the guilty plea. *Id.* (citing *Delarosa*, ¶¶ 18-19, 525 P.3d at 1030).

3

## DISCUSSION

[¶11] Mr. Green challenges the adequacy of the factual basis of his guilty plea on the ground that the evidence did not establish the bleach he used was a deadly weapon, a required element for the crime of aggravated assault and battery with a deadly weapon under § 6-2-502(a)(ii). Specifically, Mr. Green asserts the bleach did not meet the definition of a "deadly weapon" as that term is defined in the Wyoming Criminal Code, including because there was no factual basis for finding it was "reasonably capable of producing death or serious bodily injury." § 6-1-104(a)(iv). We conclude the district court did not err in accepting Mr. Green's guilty plea, as there was a sufficient factual basis to conclude bleach was a deadly weapon in the context of this case.

[¶12] The first prong of the plain error standard of review is met because the change of plea hearing transcript appears in the record. We therefore turn to the second prong—whether the district court clearly and obviously violated a clear and unequivocal rule of law. A "merely arguable" violation is insufficient to establish plain error. *Ingersoll v. State,* 2022 WY 74, ¶ 10, 511 P.3d 480, 484 (Wyo. 2022) (citations omitted). A court violates a clear and unequivocal rule of law if it accepts a guilty plea without a sufficient factual basis demonstrating the defendant committed the crime with which he is charged. *Lynch,* ¶ 15, 552 P.3d at 397 (citing *Delarosa,* ¶ 9, 525 P.3d at 1027 (citations omitted)).

[¶13] Rule 11(f) of the Wyoming Rules of Criminal Procedure (W.R.Cr.P.) governs guilty pleas: "Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea." This inquiry must include a determination that the defendant understood his conduct, in light of the law, was criminal. *Lynch,* ¶ 13, 552 P.3d at 397 (quoting *Beeson v. State,* 2022 WY 86, ¶ 8, 512 P.3d 986, 990 (Wyo. 2022) (citation omitted)). However, Rule 11(f) does not require proof beyond a reasonable doubt that a defendant who pleads guilty is actually guilty—the standard is much lower. *Maes v. State,* 2005 WY 70, ¶ 10, 114 P.3d 708, 711 (Wyo. 2005). "Rule 11(f) merely requires the court to satisfy itself that a factual basis exists for the guilty plea before accepting the plea." *Id.* (citing *Van Haele v. State,* 2004 WY 59, ¶ 27, 90 P.3d 708, 716 (Wyo. 2004)).

[¶14] The purpose of a sufficient factual basis is "'to prevent the individual charged with a crime from being misled into a waiver of substantial rights.'" *Beeson,* ¶ 8, 512 P.3d at 989 (quoting *Williams v. State,* 2015 WY 100, ¶ 21, 354 P.3d 954, 962 (Wyo. 2016) (citations omitted)). "As long as the defendant understands the substance of the questions and the nature of the charge, yes-and-no answers are sufficient to establish a factual basis." *Beeson,* ¶ 8, 512 P.3d at 989 (citing *United States v. Torrellas,* 455 F.3d 96, 103-04 (2d Cir. 2006) (citations omitted)). In addition, the factual basis for accepting a plea may be inferred from circumstances surrounding the crime. *Maes,* ¶ 21, 114 P.3d at 714 (citing *Sami v. State,* 2004 WY 23, ¶ 9, 85 P.3d 1014, 1017 (Wyo. 2004)).

4

[¶15]  To determine if there was a sufficient factual basis under W.R.Cr.P. 11(f), "we compare the elements of the charged offense to the facts admitted by the defendant and inferences arising from those facts." *Lynch,* ¶ 15, 552 P.3d at 397 (quoting *Delarosa,* ¶ 9, 525 P.3d at 1027) (citation omitted).  There must be a sufficient factual basis for each element. *Id.*

[¶16]  Mr. Green pled guilty to aggravated assault and battery with a deadly weapon under § 6-2-502(a)(ii), which states:

> (a) A person is guilty of aggravated assault and battery if he:
> (ii)  Attempts to cause, or intentionally or knowingly causes bodily injury to another with a deadly weapon[.]

[¶17]  To understand what constitutes a deadly weapon, we look to the definitions section of the Wyoming Criminal Code, and specifically § 6-1-104(a)(iv), which states:  "'Deadly weapon' means but is not limited to a firearm, explosive or incendiary material, motorized vehicle, an animal or other device, instrument, material or substance, which in the manner it is used or is intended to be used is reasonably capable of producing death or serious bodily injury[.]"  In pertinent part, the Wyoming Criminal Code then defines "[s]erious bodily injury" to mean injury that, "[c]reates a substantial risk of death; [c]auses severe protracted physical pain; or [c]auses severe disfigurement or protracted loss or impairment of a bodily function."  § 6-1-104(a)(x)(A)-(C).

[¶18]  Given its plain definition, a deadly weapon that could cause serious bodily injury can be a multitude of things, aside from the predictable gun or knife, depending on "the manner it is used or is intended to be used."  § 6-1-104(a)(iv).  In *Thompson v. State*, we discussed the term "drawn deadly weapon" under Wyo. Stat. Ann. § 6-2-502(a)(iii) (2023)[4]:

> If the legislature had intended to limit the weapons a defendant could use to violate § 6-2-502(a)(iii) to guns or knives, it would have specifically listed those in the statute. Instead, it used the more general term, "deadly weapon," which is defined by statute as including, but not limited to, "a firearm, explosive or incendiary material, motorized vehicle, an animal or other device, instrument, material or substance, which in the manner it is used or is intended to be used is reasonably capable

---

[4] Wyo. Stat. Ann. § 6-2-502(a)(iii) states that a person is guilty of aggravated assault and battery if he "[t]hreatens to use a drawn deadly weapon on another unless reasonably necessary in defense of his person, property or abode or to prevent serious bodily injury to another."

of producing death or serious bodily injury." Section 6-1-104(a)(iv). The legislature did not limit the types of deadly weapon that can be used to commit the crime set out in § 6-2-502(a)(iii), and we do not add language to a statute that the legislature chose to omit. *Wyodak Res. Dev. Corp. v. Wyo. Dep't of Revenue,* 2017 WY 6, ¶ 31, 387 P.3d 725, 733 (Wyo. 2017).

2018 WY 3, ¶ 32, 408 P.3d 756, 764 (Wyo. 2018). In that case, we concluded a beer bottle and clay art piece were deadly weapons that could be drawn so as to constitute an aggravated assault and battery. *Id.,* ¶¶ 27-33, 408 P.3d at 763-65.

[¶19] This Court has considered what constitutes a deadly weapon on several other occasions as well, including a chair, a frying pan, and a jack handle. *Jones v. State,* 2009 WY 33, ¶ 24, 203 P.3d 1091, 1097-1098 (Wyo. 2009) (finding a sufficient factual basis for a guilty plea to a charge of aggravated assault and battery with a deadly weapon when defendant stated he threw a wooden chair at the victim); *Conine v. State,* 2008 WY 146, ¶ 10, 197 P.3d 156, 160 (concluding evidence was sufficient to allow a jury to "apply common sense and experience" to find a frying pan was a deadly weapon); *Hampton v. State,* 558 P.2d 504 (Wyo. 1977) (finding evidence sufficient to sustain jury's verdict finding a jack handle was a dangerous or deadly weapon). Even shoes can be deadly weapons depending upon how they are used. *Warren v. State*, 835 P.2d 304, 308 (Wyo. 1992).

[¶20] While this Court has not considered whether bleach could be a deadly weapon, other states have. In *Smith v. State of Florida*, 969 So.2d 452, 455 (Fla. Dist. Ct. App. 2007), a Florida court found bleach, as used by defendant, was a "deadly weapon" within the meaning of Florida's aggravated battery statute. The Florida court pointed to evidence that bleach was "sloshed" in the victim's face three or four times and got into her eyes, mouth, and throat. As a result, the victim could not open her eyes and had difficulty breathing. *Id.* The victim also had to go to the emergency room. *Id.* The Florida appellate court held that it was appropriate for the jury, as the fact finder, to determine whether the use of bleach was likely to cause great bodily harm so as to constitute a deadly weapon. *Id.*

[¶21] Similarly, in *State of Louisiana v. Jasper*, 149 So.3d 1239, 1248 (La. Dist. Ct. App. 2014), witnesses testified that Ms. Jasper threw bleach out of a Styrofoam cup into the eyes of two victims, and experts testified bleach could cause blindness and liquefactive necrosis. After a jury convicted Ms. Jasper of aggravated battery she appealed, claiming the prosecution failed to establish the bleach she used was a dangerous weapon pursuant to Louisiana statute. *Id.* In affirming the trial court, the appellate court explained "virtually any item, no matter how innocuous, can be considered a dangerous weapon provided the manner in which is it used is likely to produce death or great bodily harm." *Id.* (internal

6

quotation omitted). As a result, the court found bleach—in the manner in which Ms. Jasper used it—constituted a dangerous weapon. *Id.* at 1249.

[¶22] In short, there is no doubt that bleach can constitute a deadly weapon under § 6-2-104(a)(iv) and § 6-2-502(a)(ii). Mr. Green acknowledges as much, but spends considerable effort arguing that the precise composition of the bleach he threw in Mr. Ingwerson's face is unknown. The kind or composition of the bleach Mr. Green used is not important in light of the fact that he admits it was bleach, law enforcement concluded it was bleach, and Mr. Green used it intending to cause bodily harm to Mr. Ingwerson.[5]

[¶23] Mr. Green's more nuanced argument is that there was not a sufficient factual basis for the district court to find the bleach used was a deadly weapon because—regardless of his intent—there was insufficient evidence it was reasonably capable of causing serious bodily injury. While Mr. Green acknowledges Mr. Ingwerson suffered bodily injury, he asserts he did not suffer *serious* bodily injury as that term is defined in the Wyoming Criminal Code. As previously noted, the definition of serious bodily injury under the Code includes bodily injury which causes "severe protracted physical pain," "severe disfigurement," or "protracted loss or impairment of a bodily function." § 6-1-104(a)(x). According to Mr. Green, Mr. Ingwerson's physical pain, chemical burn, and temporary eye irritation or impairment do not qualify as serious bodily injuries under that definition, as "nothing in the factual basis or in the affidavit supported pain or impairment which lasted beyond [the morning of the assault]."

[¶24] Mr. Green's argument about Mr. Ingwerson's actual injuries misses the point. The appropriate question is whether the weapon used in this case (bleach) was *reasonably capable* of producing severe protracted pain or protracted loss/impairment of bodily function, not whether it did.[6] *See Conine,* ¶ 8, 197 P.3d at 160 (finding to convict, the jury only needed to find that the defendant caused bodily injury to his victim by attacking him with an object that might reasonably cause serious bodily injury or death). We stated in *Conine, "*[t]he State was not required to prove, nor was the jury required to find, that Cox suffered serious bodily injury when Conine hit him with the frying pan. To convict

---

[5] In *Commonwealth of Pennsylvania v. Raybuck*, 915 A.2d 125, 129 (Pa. Super. 2006), the Superior Court of Pennsylvania went so far as to find that, although an amount of commercial mouse poison added to a sandwich was insufficient to actually cause serious bodily injury, the defendant's admitted intent to poison her husband, combined with the inherent nature of the poison, was a sufficient basis to conclude the poison was a deadly weapon for the purposes of sentencing enhancement.

[6] Mr. Green relies on *Thompson* for the proposition that the factual basis in this case does not establish whether Mr. Ingwerson's pain was *protracted* such that it caused serious bodily injury. In *Thompson*, the victim suffered from complete hearing loss in one ear for "about a month" and this Court indicated "the facts supporting 'protracted impairment [were] not overwhelming.'" *Thompson*, ¶ 36, 408 P.3d at 765. Again, the nature and extent of Mr. Ingwerson's actual injuries is not the issue. In addition, *Thompson* involved a challenge to the sufficiency of the evidence in a jury trial, not a guilty plea.

Conine, the jury only needed to find from the State's evidence that Conine caused bodily injury to Cox by attacking him with an object that **might** reasonably cause serious bodily injury or death." *Id.*[7] (emphasis added).

[¶25]  In *Jones*, this Court considered whether evidence the defendant used a chair and a bed rail in an attack was sufficient to support a guilty plea to assault and battery with a deadly weapon. *Jones,* ¶¶ 18-26, 203 P.3d at 1096-98.  Jones repeatedly hit his wife over the head with both objects and pled guilty to aggravated assault and battery with a deadly weapon. *Id.,* ¶¶ 3, 5, 203 P.3d at 1093.  On appeal, he argued the district court did not give the definition of "deadly weapon" at his change of plea hearing, and therefore, he could not have given an adequate factual basis for his plea.[8]  *Id.,* ¶ 9, 203 P.3d at 1094.  But at his hearing, when the court stated "there has to be a deadly weapon involved," Mr. Jones responded, "Yeah, I threw a chair." *Id.,* ¶ 24, 203 P.3d at 1098.  Beyond that, no testimony was given as to the potential deadly nature of a chair or bedrail, although the State made an offer of proof about Mrs. Jones being struck with a chair and bed rail that "would have been deadly weapons in this case."  Even so, we held that "[g]iven the facts and circumstances of the crime, the prosecutor's statement and Jones' statement," the factual basis was sufficient to support Mr. Jones' guilty plea. *Id.,* ¶ 26, 203 P.3d at 1098.

[¶26] In this case, Mr. Green's admissions during the plea colloquy, the affidavit incorporated into the factual basis, reasonable inferences, and commonsense support the conclusion that the bleach Mr. Green threw in Mr. Ingwerson's face was reasonably capable of producing serious bodily injury.  Specifically, the factual basis included Mr. Ingwerson's statements to law enforcement that the bleach burned his face, mouth, and nose, and that he felt like his body was on fire, as well as their observations of his injuries. In addition, Mr. Ingwerson explained the pain he felt was the "most pain he has ever gone through." Mr. Ingwerson also went to the hospital for treatment, after which medical staff reported signs of a chemical injury on his back.  Finally, a substantial amount of bleach was found at the scene on the recliner where Mr. Ingwerson was sitting.  These facts are more robust than those we found sufficient in *Jones.*  More importantly, and combined with a commonsense understanding of the dangers of bleach in one's eyes, nose, or mouth, they are sufficient to demonstrate the bleach Mr. Green threw at Mr. Ingwerson was reasonably capable of producing a serious bodily injury.

---

[7] *Conine* is somewhat distinguishable from the current case, because it was a jury trial and thus our standard of review on appeal was for the sufficiency of the evidence.  It is nonetheless instructive.

[8] The thrust of Mr. Jones' claim on appeal was the amended information in his case was not properly authorized and, as a result, he never received a preliminary hearing on the new charge.  Mr. Jones argued because of this he was not properly informed "he would be called to account for using a 'deadly weapon'" and was "unable to consider" the term's definition pursuant to Wyo. Stat. Ann. § 6-2-502(a)(ii). *See Jones,* ¶ 9, 203 P.3d at 1093-94.

[¶27] We conclude an adequate factual basis existed to satisfy the elements of aggravated assault and battery with a deadly weapon to support Mr. Green's guilty plea, and therefore, the district court did not violate a clear and unequivocal rule of law. As a result, we need not consider the third element required for plain error—whether Mr. Green's substantial rights were affected.

## *CONCLUSION*

[¶28] The district court did not err in accepting Mr. Green's guilty plea to the charge of aggravated assault and battery with a deadly weapon.

[¶29] Affirmed.