# IN THE SUPREME COURT, STATE OF WYOMING

## 2025 WY 52

APRIL TERM, A.D. 2025

May 8, 2025

BRYANT ROSS MONTOYA,

Appellant
(Defendant),

v.

S-24-0251

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
*The Honorable Steven K. Sharpe, Judge*

*Representing Appellant:*

*Office of the State Public Defender: Brandon Booth, Wyoming State Public Defender; Kirk A. Morgan, Chief Appellate Counsel. Argument by Mr. Morgan.*

*Representing Appellee:*

*Bridget Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen Reeves Jones, Senior Assistant Attorney General; John J. Woykovsky, Senior Assistant Attorney General. Argument by Mr. Woykovsky.*

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**FOX, Chief Justice.**

[¶1]   A jury convicted Bryant Ross Montoya of felony property destruction based on charges he intentionally and repeatedly rammed his truck into the vehicle of another motorist. Mr. Montoya appeals, arguing the district court erred in instructing the jury on his self-defense claim. We affirm.

## ISSUE

[¶2]   This appeal presents a single issue: Did the district court commit plain error by giving the jury self-defense instructions for deadly force rather than non-deadly force?

## FACTS

[¶3]   Mr. Montoya and Samuel Kremer were longtime friends until 2021 when they had a falling out over wages that Mr. Kremer claimed he had earned while working for Mr. Montoya. After their falling out, Mr. Kremer threatened Mr. Montoya, and in October 2022, he followed through on that threat and punched Mr. Montoya in the side of the face while Mr. Montoya was speaking to someone else at a bar.

[¶4]   Mr. Montoya and Mr. Kremer did not meet again until the morning of August 21, 2023, when they encountered each other while driving on Lincolnway Avenue in Cheyenne, Wyoming. Their accounts of what happened that day differ. Mr. Montoya reported that he passed Mr. Kremer, and Mr. Kremer flipped him off, got behind him, and hit the back of his truck. Mr. Montoya reported he then backed his truck into Mr. Kremer's truck to disable it, after which Mr. Kremer chased him and Mr. Montoya swerved into him while trying to maintain his lane.

[¶5]   Mr. Kremer reported that he saw a vehicle accelerating behind him and following closely. He did not know who it was until the vehicle sped up and got alongside him, and he saw Mr. Montoya flipping him off. Mr. Montoya passed Mr. Kremer, and Mr. Kremer changed lanes and pulled in behind Mr. Montoya so he would not be stopped next to him at a red light. After Mr. Montoya brake checked Mr. Kremer to a stop, Mr. Kremer tried to get past him, and Mr. Montoya sped up and "smashed" into him. Mr. Kremer then moved to the right lane, and Mr. Montoya "smashed" into him again, pulled in front of Mr. Kremer, and then put his truck in reverse and crashed into him a third time.

[¶6]   When this incident occurred, Vincent Sandberg, who had no connection with either Mr. Montoya or Mr. Kremer, was driving from the opposite direction on Lincolnway. Mr. Sandberg reported seeing two other vehicles on the road that morning, a white truck and a red truck. Mr. Montoya was driving the white truck, and Mr. Kremer the red one. Mr. Sandberg reported that the white truck entered Mr. Sandberg's lane, sideswiped the red truck, and then hit the red truck hard enough to force it from the left

1

lane into the right lane. He reported that the white truck then pulled in front of the red truck, and the driver put it in reverse and backed into the red truck, hitting it hard.

[¶7]  Officer Matthew Ryan of the Cheyenne Police Department responded to three separate 911 calls concerning the incident, one from Mr. Kremer, one from Mr. Montoya, and one from Mr. Sandberg. Officer Ryan spoke to all three and related the following concerning his conversation with Mr. Montoya:

> A.  So I stated that I had talked to witnesses on the phone that said they saw him purposely aggressively back into Mr. Kremer's vehicle.
>
> Mr. Montoya said that, yes, he hit me first, so I pulled forward and gave him some more, indicating that he backed into the vehicle.

[¶8]  The State charged Mr. Montoya with felony property destruction and misdemeanor hit and run but dismissed the misdemeanor count. Before trial, Mr. Montoya submitted a pretrial memorandum that included a list of proposed instructions, including "8.02 through 8.14B as applicable Self-Defense instructions." At the pretrial conference, the district court raised a concern with the language in one of Mr. Montoya's proposed self-defense instructions.[1] The court noted that because "a vehicle has been determined to be a deadly weapon," the appropriate instruction must be one that addresses "the use of deadly force." Mr. Montoya's counsel stated, "We do not object to that," and added that she "didn't know if it would be considered a deadly weapon or not." The court responded:

> I think it is. I mean, I think a car has been determined to be a deadly weapon for ag[gravated] assault and those types of things. So it is just something to think about in advance of our instruction conference. We may swap out that instruction with the pattern instruction. That may be more appropriate.

[¶9]  At trial, following the close of evidence, the district court held an instruction conference. The court noted that the instructions included the statement that "a person who is using defensive force is entitled to use only the amount of force that a reasonable person in like circumstances would judge necessary to prevent imminent death or serious bodily injury."  Neither the State nor counsel for Mr. Montoya objected. After the court prepared the final instructions packet, it informed the parties that because one of the

---

[1] Mr. Montoya's proposed instructions are not in the record.

instructions also used the term deadly force, the court added an instruction defining the term. Defense counsel again indicated she had no objection.

[¶10] In closing, Mr. Montoya argued he acted in self-defense when he reversed into Mr. Kremer's vehicle, hoping to disable it. He claimed he was in fear of imminent bodily harm and had a reasonable fear of serious bodily harm. The jury rejected Mr. Montoya's defense and found him guilty of felony property destruction. The district court sentenced Mr. Montoya to a prison term of two to four years, suspended in favor of three years of probation, and Mr. Montoya timely appealed to this Court.

## *DISCUSSION*

[¶11] In the district court's final instructions to the jury, it included Instruction No. 15, which stated:

> The State must prove beyond a reasonable doubt that the defendant did not act in self-defense. Self-defense is a right that can be exercised only when the person employing it has the right to do so at the moment it is used. Whether he has the right depends on what is reasonably necessary under all the circumstances.

[¶12] The district court then gave the following two instructions, which Mr. Montoya did not object to below but now challenges on appeal:

### Instruction No. 16

> To determine what is reasonably necessary you must determine whether the defendant reasonably perceived a threat of imminent death or serious bodily injury under the circumstances. If the defendant reasonably and honestly believed that he was in imminent danger of death or serious bodily injury and the force used was necessary to repel that danger, he may have been entitled to self-defense. The perceived danger may have been real, apparent, or later determined to be false.

### Instruction No. 17

> One who uses defensive force was entitled to use only the amount of force that a reasonable person in like circumstances would judge necessary to prevent imminent death or serious bodily injury and no more. This force may

3

include deadly force only if necessary to prevent imminent death or serious bodily injury to the defendant. The right to use force ceases to exist when there is no longer any apparent danger of further violence on the part of the aggressor.

[¶13] Mr. Montoya contends that the law allows a person to exercise self-defense to prevent "an injury or loss" and Instructions 16 and 17 were therefore erroneous because they limited the circumstances under which a person may exercise self-defense to those where a person fears not merely injury or loss but imminent danger of death or serious bodily injury. Because Mr. Montoya did not object to these instructions below, our review is for plain error. *Iverson v. State*, 2025 WY 19, ¶ 13, 563 P.3d 496, 499 (Wyo. 2025). "To establish plain error, an appellant must show: '(1) the record clearly reflects the alleged error; (2) a violation of a clear and unequivocal rule of law in a clear and obvious manner; and (3) the appellant was denied a substantial right which caused the appellant material prejudice.'" *Id.* (quoting *Kobielusz v. State*, 2024 WY 10, ¶ 24, 541 P.3d 1101, 1108 (Wyo. 2024)). "Material prejudice exists when the appellant demonstrates a reasonable probability that the jury verdict would have been more favorable in the absence of the error." *Iverson*, 2025 WY 19, ¶ 13, 563 P.3d at 499 (quoting *Lee v. State*, 2024 WY 97, ¶ 12, 555 P.3d 496, 499 (Wyo. 2024)).

[¶14] Because the record contains the allegedly erroneous instructions, the first prong of the plain error test is satisfied. We need not address the second prong, or the question of whether self-defense is available as a defense to a charge of property destruction, because Mr. Montoya has not shown that he was materially prejudiced by the allegedly erroneous instructions.[2] *See Green v. State*, 2025 WY 20, ¶ 10, 563 P.3d 1090, 1093 (Wyo. 2025) ("Failure to establish each element precludes a finding of plain error.") (quoting *Lynch v. State*, 2024 WY 79, ¶ 12, 552 P.3d 392, 397 (Wyo. 2024)).

[¶15] Mr. Montoya asserts that because he admitted reversing into Mr. Kremer's vehicle, the only issue for the jury to decide was whether he did so in self-defense. He thus contends that the inclusion of the terms deadly force and imminent and serious bodily harm in the self-defense instructions necessarily materially prejudiced him. We disagree.

[¶16] Although Mr. Montoya argued in closing that he feared imminent and serious bodily harm, the State did not mention those terms, or the term deadly force. The State's argument against Mr. Montoya's self-defense claim was not the nature or quality of the threat he allegedly perceived; the State's position was that Mr. Montoya was the

---

[2] The question of whether self-defense is a defense to a property destruction charge was not raised below or briefed on appeal. For purposes of our review, we assume without deciding that the defense was available.

4

aggressor and therefore not entitled to self-defense. On this question, the evidence overwhelmingly favored the State's position.

[¶17] Both Mr. Kremer and Mr. Sandberg, a disinterested witness, testified to the same version of events: Mr. Montoya twice rammed the side of Mr. Kremer's vehicle and then pulled in front of him and reversed into his vehicle. Additionally, Mr. Sandberg testified he never saw any aggression on the part of the driver of the red vehicle, which was Mr. Kremer.

[¶18] Given the overwhelming evidence that Mr. Montoya was the aggressor, we see no reasonable probability that the jury verdict would have been more favorable in the absence of the alleged error. We therefore find no material prejudice and no plain error. *See Sindelar v. State*, 2018 WY 29, ¶ 27, 416 P.3d 764, 771 (Wyo. 2018) (finding no material prejudice from erroneous self-defense instructions where defendant's theory that victim was aggressor was not corroborated by physical evidence or testimony of other witnesses).

[¶19] Affirmed.